## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

### Lewis J. Northrop v. Edmond duPont, Et Al, Individually and Partners T/A Francis I. duPont & Co.

April 27, 1970.

Record No. 7115.

Present, All the Justices.

*Leonard B. Sachs* (*Canoles & Mastracco,* on brief), for plaintiff in error.

*Joseph L. Kelly, Jr.* (*Williams, Worrell, Kelly and Worthington,* on brief), for defendants in error.

Gordon, J., delivered the opinion of the court.

Lewis J. Northrop brought this action against Francis I. duPont & Company to recover the consideration he paid for stock of Interamerican Industries, Ltd. bought through duPont.

The purchases were initiated by Northrop, who instructed du-Pont to buy Interamerican stock for his account. Since duPont did not make a market for Interamerican stock, which was traded over-the-counter, it resorted to the "pink sheets" to find dealers who were offering Interamerican stock for sale. duPont executed each

of Northrop's buy orders for Interamerican stock through one of those dealers.

duPont did not solicit any of Northrop's orders for Interamerican stock. In fact, duPont never recommended the purchase of Interamerican stock or encouraged Northrop to buy the stock.

Northrop bought and sold Interamerican stock during the period August 1966–May 1967.[1] In May 1967 trading in the stock was temporarily suspended by the Securities and Exchange Commission for a reason the record does not disclose. While he was trading in the stock, Northrop repeatedly asked a duPont representative to obtain information about Interamerican. The representative told Northrop that he could obtain no information about Interamerican from duPont's research department.

Interamerican stock had not been registered under the Securities Act of 1933 (the "1933 Act" or the "Act"). duPont knew that no registration statement was in effect with respect to the shares bought by Northrop, but did not advise him that the shares had or had not been registered. A duPont representative testified at the trial that because of the exemptions under the 1933 Act, thousands of unregistered securities were traded on exchanges or over-the-counter. He therefore deemed it not "remarkable" that no registration statement had been filed with respect to the Interamerican stock.

Northrop sought recovery against duPont under the 1933 Act, 15 U.S.C. §§ 77a, et seq. (1964), the Virginia Securities Act, Va. Code Ann. §§ 13.1-501, et seq. (Repl. vol. 1964), and for common law negligence. After hearing the evidence adduced by Northrop's counsel, the relevant portion of which we have summarized, the court struck the evidence and entered summary judgment for duPont.

On this appeal, Northrop's counsel contends that (1) "the defendant [duPont] is liable to the plaintiff [Northrop] under the Securities Act [the 1933 Act] for selling a security [the Interamerican stock] which was not registered as required by the Act", (2) "the defendant was under a legal duty to advise the plaintiff that the Interamerican stock was not registered where the defendant had actual knowledge of such fact", and (3) "the defendant is liable to

---

[1] Northrop bought 4,400 shares through duPont and 500 shares through another broker, and he sold 4,200 shares through duPont. As indicated in the first paragraph of this opinion, Northrop seeks to recover the total consideration paid for all shares purchased through duPont despite the fact that he can tender only 700 shares. See 15 U.S.C. § 77l (1964), infra n. 2.

the plaintiff for the negligent manner in which it dealt with the plaintiff in the Interamerican securities".

██ Northrop's counsel first contends that duPont is liable under § 12(1) of the 1933 Act[2] because, in violation of § 5 of the Act, duPont used interstate facilities or the mails to sell him an unregistered security, Interamerican stock.[3] As pointed out by Professor Loss, however, "[s]ection 5 must be read in the light of the definitions contained in § 2 and the exemptions contained in §§ 3 and 4". I *L. Loss, Securities Regulation* 182 (2d ed. 1961). And § 4 of the 1933 Act provides:

> "The provisions of section 77e of this title [§ 5 of the 1933 Act] shall not apply to—
> "* * *
>
> "(4) brokers' transactions executed upon customers' orders on any exchange or in the over-the-counter market but not the solicitation of such orders."

15 U.S.C. § 77d (1964).

Since duPont's execution of Northrop's unsolicited orders for the purchase of Interamerican stock was an exempt transaction under §

---

[2] Section 12 provides:

"Any person who—

"(1) offers or sells a security in violation of section 77e of this title [§ 5 of the 1933 Act], or

"(2) offers or sells a security (whether or not exempted by the provisions of section 77c of this title [§ 3 of the 1933 Act], other than paragraph (2) of subsection (a) of said section), by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission,

shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security." 15 U.S.C. § 77*l*.

[3] Section 5 provides:

"(a) Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly—

"(1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or

"* * * ," 15 U.S.C. § 77e.

4(4) of the 1933 Act, the registration requirements of § 5 of the Act were not applicable to duPont. *Hyman* v. *Gregory & Sons*, 44 Misc. 2d 102, 252 N.Y.S. 2d 919 (Sup. Ct. 1964); *see* Securities Act Release No. 2623 (July 25, 1941), 11 Fed. Reg. 10964, 10965 ("[t]he prospectus requirements of the Act do not apply to unsolicited brokers' transactions, whether executed on an exchange or over the counter"). The registration requirements of § 5 being not applicable, duPont is not liable to Northrop under § 12(1) of the Act.[4]

Secondly, Northrop's counsel contends that duPont is liable under § 12(2) of the 1933 Act, n. 2 *supra*, because it failed to advise Northrop that the shares of Interamerican stock bought by him were not registered as required by the 1933 Act. Counsel points to Northrop's testimony that he asked duPont for information about Interamerican but received none. And counsel points to Northrop's testimony that he would not have bought Interamerican stock had he known it was "an illegal stock being brought in from Canada", "a bootleg stock".

The statement that duPont had no information about Interamerican was the only statement of fact made by duPont on which Northrop can rely to invoke § 12(2) of the Act. And if this statement was untrue, because duPont knew that the shares of Interamerican bought by Northrop had not been registered under the Act, Northrop can invoke § 12(2) only if non-registration was a material fact.

Northrop and his counsel proceed on the false premise that all securities sold in interstate commerce must be registered under the Act. In fact, § 4 of the Act exempts many transactions from the registration requirements of the Act, and because of those exemptions many unregistered securities are traded on exchanges and in the over-the-counter market. As indicated by the duPont representative, the mere fact that no registration statement is in effect with respect to a security traded on an exchange or over-the-counter does not indicate violation of the 1933 Act. " '[T]he act is, in the main, concerned with the problem of distribution as distinguished from trading.' " I *L. Loss*, *supra* at 183, quoting from H. R. Rep. No. 85, 73d Cong., 1st Sess. (1933) 15.

Nothing in the evidence shows that the persons who sold Inter-

---

[4] *See Lustgarten* v. *Albert Teller & Co.*, 304 F. Supp. 771 (E.D. Pa. 1969), a case not cited in the briefs, where the defendant Teller solicited the plaintiffs to purchase shares of Interamerican Industries, Ltd. Holding the dealer's exemption under § 4(3) of the 1933 Act applicable, the Court entered summary judgment for Teller.

american stock to Northrop were required to file a registration statement with respect to those sales. There being no support for a finding that the shares bought by Northrop should have been registered, the fact that they were not registered was not a material fact. So duPont is not liable to Northrop under § 12(2) of the Act.[5]

In contending that duPont should be held liable for common law negligence, Northrop's counsel apparently relies upon duPont's failure to advise Northrop that Interamerican stock had not been registered under the 1933 Act. In his brief, counsel argues "[t]he silence of the defendant's Norfolk employees [about non-registration of Interamerican stock] could at least be impliedly construed as a representation to the plaintiff that the stock was valid". What has been already said disposes of this contention.

*Affirmed.*

---

[5] Citing *Newberg* v. *American Dryer Corp.*, 195 F. Supp. 345 (E.D. Pa. 1961), duPont's counsel advances another reason why duPont should not be held liable under § 12(1) or (2) of the 1933 Act: a broker who as representative of the buyer only executes an unsolicited order is not one who "offers" or "sells" within the meaning of the 1933 Act. *See also* III *L. Loss, Securities Regulation* 1713-14 (2d ed. 1961). In view of our holdings that clauses (1) and (2) of § 12 are not applicable for other reasons, we do not decide this point.