340 A.2d 140.

AGAR SUPPLY CO., INC. *vs.* DAVID-HODOSH CO., INC.

JUNE 27, 1975.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

DORIS, J. This is a civil action wherein the plaintiff seeks to recover the value of goods sold and delivered to the defendant. The defendant in its answer filed a counterclaim for damages, alleging that the goods were unfit for human consumption and of unmerchantable quality. Trial was held to a Superior Court justice sitting without a jury, and judgment was entered for the plaintiff in the amount of $7,051.20, plus interest of $775.63, for a total of $7,826.83. From this judgment, the defendant now appeals.

The plaintiff, Agar Supply Co., Inc. (hereinafter Agar), a Massachusetts corporation, is principally engaged in distributing fresh pork products. The defendant, David-Hodosh Co., Inc., (hereinafter David-Hodosh), a Rhode Island corporation, is also engaged in the distribution of meat products. Both corporations have been engaged in the meat distribution business for many years, and both operate government inspected plants.

It appears that on December 1, 1971, Agar placed an order with Klayman Company (hereinafter Klayman), a pork packaging firm located in Philadelphia, Pennsylvania, for 500 boxes of pork loins. The pork was to be slaughtered on Wednesday and cut on Thursday, for a Friday,

December 3, delivery to Agar at Boston. On Thursday, December 2, 1971, David-Hodosh placed an order with Agar for 200 boxes of Klayman pork loins for delivery at Providence. The 500 boxes of pork loins from Klayman arrived at Agar's Boston plant at or about 6 a.m. on Friday, December 3, 1971. Allan Bressler, manager of Agar, testified that shortly after arrival in Boston, the Klayman trailer was checked as to seals and temperature. A random inspection was also performed, which included the opening of boxes and a visual inspection of the meats and bones for color and soundness. The internal temperature of the pork was also taken.

Two hundred boxes of the pork loins were then loaded onto a refrigerated Agar truck and were transported to Providence for David-Hodosh. The shipment arrived in Providence between 9 a.m. and 10 a.m. on December 3, and was received by Samuel David, an officer of David-Hodosh, who inspected a few boxes and signed a receipt for the pork products. The receipt contained the statement, "all claims must be made immediately." Samuel David testified that after being received, the pork loins were placed in defendant's cooler for delivery to customers on the following day.

On Saturday, December 4, 145 boxes of the Klayman pork loins, received from Agar, were delivered by defendant in refrigerated trucks to various branches of Almac's, Inc., an operator of supermarkets in the Providence area. Mr. David testified that on Monday, December 6, defendant received complaints from Almac's that the pork was unmerchantable, and that sometime later the pork was returned to David-Hodosh, stored in a commercial cooler, and still later sold for a price far below the price at which it was ordered from Agar. Mr. David further stated that on Monday, December 6, 1971, following complaints from Almac's, David-Hodosh notified Agar by telephone of the

unmerchantability of the pork loins. He also testified that 55 of the 200 boxes of pork loins received from Agar which had not been delivered to Almac's were found to be unfit on Monday morning. He stated that these 55 boxes had been in defendant's cooler since the time of delivery by Agar on Friday.

Carl Bressler, owner and founder of Agar, testified that he was present and had observed his son Allan unloading and checking the pork loins with a meat thermometer as they arrived from Klayman on December 3, 1971. He stated that he personally examined the pork and found it fit and in good condition. He indicated that approximately 40 boxes were inspected at random. Carl Bressler concluded his testimony by stating that it was the custom and usage of the meat industry to allow a buyer of pork products to reject the goods on the same day they were tendered but not later than the following morning. He further stated that it was an industry policy that when pork products were signed for and placed in the cooler of the buyer, the products became the property of the buyer.

Samuel David testified that he too was familiar with the customs and usages prevalent in the meat industry, but that it was his understanding that in the event the product was discovered to be unfit after delivery, complaint could be made to the supplier within a reasonable time after discovery. He also disputed the statement of Carl Bressler that according to custom and usage of the trade, the buyer becomes the owner of the product when it is delivered and placed in the buyer's cooler.

The defendant contends that the trial justice misconceived both the evidence and the law applicable to the evidence. In effect defendant takes the position that the testimony by Mr. David that the pork was placed in defendant's cooler almost immediately upon arrival in Providence on December 3, 1971, and the testimony that the

55 boxes of pork which never left the cooler were unfit on Monday, December 6, necessarily requires the conclusion that the product was not merchantable at the time of delivery.

The trial justice found that the pork was of good and merchantable quality when received by plaintiff on December 3, and that it was in the same good merchantable condition when received by defendant later the same day. It is well settled that the findings of a trial justice sitting without a jury will not be disturbed on appeal unless the trial justice was clearly wrong or has overlooked or misconceived material evidence. *Engelhardt* v. *Bergeron,* 113 R. I. 50, 317 A.2d 877 (1974); *Jackson* v. *Quinlan,* 111 R. I. 701, 306 A.2d 185 (1973).

We have carefully reviewed the record before us, and we conclude that defendant has failed to establish that the trial justice was clearly wrong or that he overlooked or misconceived material evidence. It is apparent that the trial justice gave great weight to the testimony of Carl Bressler, plaintiff's witness, as to the condition of the pork products on receipt from Klayman in Boston just prior to shipping them to defendant in Providence. The trial justice also noted that the goods were transshipped immediately and that other buyers of the remaining 300 boxes of pork received from Klayman were apparently satisfied with the condition of the pork.

In our opinion this is sufficient evidence on which the trial justice could conclude that the pork was of merchantable quality on arrival in Boston and was thereafter shipped to defendant in Providence under conditions which preclude any conclusion of deterioration by the time of delivery. Moreover, we note that there is no evidence in the record as to the circumstances surrounding the storage of the pork from the time of delivery to Almac's on Saturday to the time of the complaints of its unmer-

chantability on Monday. Since the findings of the trial justice were based on competent evidence, his findings will not be disturbed on appeal.

The defendant also contends that the trial justice misconceived the law. In support of this contention, it directs our attention to provisions of the Uniform Commercial Code, G. L. 1956 (1969 Reenactment) §§6A-2-601 and 6A-2-602. These sections set forth the buyer's right to reject nonconforming goods. Here, since the trial justice found that the pork was merchantable on delivery to the defendant and since this finding is supported by competent evidence, there is no showing that the plaintiff was ever in breach of his contract. *See Strauss* v. *West,* 100 R. I. 388, 216 A.2d 366 (1966). The defendant, therefore, has no remedy under the Uniform Commercial Code, and his contention that the trial justice committed an error of law is without merit.

The defendant's appeal is denied and dismissed, the judgment appealed from is affirmed, and the cause is remanded to the Superior Court.

*Adler, Pollock & Sheehan Incorporated, John F. Bomster, Englander, Englander and Englander, Malcom D. Finks,* Boston, Mass., for plaintiff.

*Freidman, Kramer, Kessler & Andreoni, Harold I. Kessler,* for defendant.