387 A.2d 1373.

## Coastal Finance Corp. *v.* Coastal Finance Corp. of North Providence.

JUNE 20, 1978.

Present: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

318

DORIS, J.   This civil matter arises out of receivership proceedings and concerns conflicting petitons to reclaim the assets of an insolvent corporation. After a hearing in the

Superior court, an order was entered granting the petition of Walter E. Heller and Company (Heller), a secured creditor, and denying the petition of certain holders of corporate notes and debentures (the investors). On appeal, the investors seek to set aside the claim of Heller and assert their own priority in the reclamation of corporate receivables.

Coastal Finance Corporation (Coastal), a small loan business and holding company owning several subsidiary corporations, was incorporated in Rhode Island in 1966. In an effort to generate an increase in funds for the corporation's lending operation, Coastal began to offer several series of subordinated debentures to the public in 1968 and 1969. The issue was to total $250,000, with the debentures carrying rates of interest of 7 percent or 8 percent per annum and reaching maturity generally in five years. The investors purchased these debentures at varying times and in a broad range of amounts. In 1972, Coastal entered into a financing arrangement with Heller, a large lending company, which became the sustenance of Coastal's operation. Heller, in return for its financing, received an interest rate of 6 percent above the prime interest rate and a security interest in all of Coastal's receivables. At the time of the agreement with Coastal, Heller filed a financing statement in the office of the Secretary of State in order to perfect its security interest as required by G.L. 1956 (1969 Reenactment) §§6A-9-302 and 6A-9-304.

In 1973 and 1974, when it appeared that most of the debentures were soon to become due, Coastal sent out letters to it investors asking them to exchange their debentures for corporate notes yielding 10 percent or 11¼ percent per year. Coastal had not been able to attain a profit in any year since its inception, and so offered this exchange at a high rate of interest to keep the investors' money in the corporation. Many of the debenture holders did acquire the notes, but Coastal continued to decline. In 1975, Coastal was petitioned into receivership. Subsequently, Heller filed a petition to

reclaim all of Coastal's receivables from the permanent receiver in order to satisfy the debt owed to Heller by Coastal. The investors then filed a petition objecting to Heller's petition on several grounds — largely consisting of allegations of fraud on the part of Coastal in obtaining their funds and illegality in the contract with Heller — and requesting a hearing on the matter. A Superior Court justice sitting without a jury found that Heller had a valid contract with Coastal and could reclaim its security from the receiver. The investors were denied priority over Heller and ordered to file as general creditors.

The investors raise several interrelated issues on appeal. They allege that Coastal did not comply with either federal or state securities laws and made deceptive statements through its officers to unsophisticated investors to induce them to buy debentures and notes. The investors assert that the statutory violations and fraudulent behavior should have led the trial justice to impose a constructive trust on the assets available to the receiver for their benefit. Further, the investors contend that Heller's priority claim should have been set aside in their favor because Heller was not a good faith purchaser for value without knowledge of Coastal's fraud on the investors, or in the alternative, because Coastal lacked the proper corporate authority to make the contract with Heller.

In relation to the issue of Coastal's possible violations of federal and state securities statutes, the trial justice stated that even assuming there were such violations, the investors could not reach the available funds because Heller had intervened as a bona fide purchaser of Coastal's receivables. However, the investors argue that if Coastal was guilty of noncompliance, Heller's status would not here affect their right to priority of recovery because of the particular statutory remedy available to them.

Several sections of the Securities Act of 1933, 15 U.S.C. §77a *et seq.* (1970), are pertinent to this issue. The investors claim that Coastal violated §77e, which prohibits communi-

cations relating to sales of securities through the use of the mails or any means of interstate commerce unless a registration statement is filed with the Securities and Exchange Commission (the SEC). Coastal did not register its securities with the SEC and did use the mails in connection with the sales of the debentures and notes. Further, Coastal advertised the sale of the debentures in a newspaper with interstate circulation. Therefore, the investors invoke §77*l*(1) defining the civil liability of one who violates §77e as the amount paid for the security with interest, less any income received. They contend that the remedy here intended is rescission and restitution of the funds, even if they have been transferred into the hands of a third party. The case which the investors cite to support their position, *Deckert* v. *Independence Shares Corp.*, 311 U.S. 282, 61 S. Ct. 229, 85 L. Ed. 189 (1940), is not dispositive of the issue but does seem to indicate that tracing of funds under §77*l* is possible and equitable.

However, the opinion of this court is that the sales of securities by Coastal were exempt from registration with the SEC according to §77c(a)(11). This section exempts an intrastate issuance of securities by a company incorporated by and doing business within the state from regulation under most of the provisions of the federal statute. Here, Coastal's securities were in fact sold only to residents of Rhode Island, and the newspaper advertisement offering the debentures clearly stated that they would be sold only to Rhode Island residents. The use of mails and other interstate facilities for an issuance which is exempt under §77c(a)(11) is not a violation of the statute. *See Hillsborough Inv. Corp* v. *Securities & Exch. Comm'n*, 276 F.2d 665 (1st Cir. 1960); 1 Loss, *Securities Regulation* 602 (2d ed. 1961). Section 77e prohibiting such use and §77*l*(1) prescribing the remedy for violation of §77e must be read as integral with the exemption provisions of the statute. *See Northrop* v. *duPont*, 210 Va. 709, 173 S.E.2d 839 (1970); 1 Loss, *supra* at 182.

Although Coastal's securities were exempt as intrastate issuances, the antifraud provisions of §77*l*(2) still apply to the

sales, according to the explicit language of that section.[1] *See Pawgan v. Silverstein*, 265 F.Supp. 898 (S.D.N.Y. 1967). Therefore, the investors might be entitled to the rescission and restitution remedy if they could prove that Coastal's officers had misled them through material misstatements concerning the offering which were communicated either orally or through the instruments of interstate commerce.

Accordingly, the investors testified at trial that Coastal's officers had represented to them that the debentures were insured, and some alleged that they had been told that the Federal Deposit Insurance Corporation guaranteed the debentures. Further, the investors stated that at the time Coastal offered the notes in exchange for the debentures, Coastal's officers reassured them that Coastal was in excellent financial condition and expected to continue doing well. However, the trial justice indicated in his order that he did not believe that the weight of the evidence supported the investors' allegations of fraudulent or misleading behavior on the part of Coastal either generally or as to individuals. It is well settled that the findings of a trial justice sitting without jury will not be disturbed on appeal unless the trial justice

---

[1]Section 77*l* 1. Civil liabilities arising in connection with prospectuses and communications.

"Any person who —

"* * *

"(2) offers or sells a security (whether or not exempted by the provisions of section 77c of this title, other than paragraph (2) of subsection (a) of said section), by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security."

was clearly wrong or has overlooked or misconceived material evidence. *Salo Landscape & Constr. Co.* v. *Liberty Elect. Co.*, 119 R.I. 269, 376 A.2d 1379 (1977); *Raheb* v. *Lemenski*, 115 R.I. 576, 350 A.2d 397 (1977); *Agar Supply Co.* v. *David-Hodosh Co.*, 115 R.I. 80, 340, A.2d 140 (1975). The investors have failed to show error on the part of the trial justice in this respect, and so we must find that the investors are not entitled to relief under §77*l*(2).

Further, any action under §77*l*(2) concerning the debentures would be barred by the limitation period set out in §77m.[2] Only the representations relating to the notes could have been called into question under §77*l*(2) at this time.

The investors next argue that Coastal violated the Rhode Island securities laws and that rescission and restitution ought to be available to them as a remedy under state law as it is under federal law. The trial justice did not find it necessary to make conclusive findings on the matter of Coastal's specific violations of the Rhode Island statute, but it does appear that Coastal was responsible for some non-compliance.

First, Coastal included in its advertisements for the sale of the debentures a statement to the effect that it had complied with all the requirements of the Rhode Island securities laws. This statement was made in violation of §7-11-15, which prohibits any reference to compliance with the provisions of the statute in the advertising of a sale of securities. Second,

---

[2]Section 77m. Limitation of actions.

"No action shall be maintained to enforce any liability created under section 77k or 77*l*(2) of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, or, if the action is to enforce a liability created under section 77*l*(1) of this title, unless brought within one year after the violation upon which it is based. In no event shall any such action be brought to enforce a liability created under section 77k or 77*l*(1) of this title more than three years after the security was bona fide offered to the public, or under section 77*l*(2) of this title more than three years after the sale."

there was some evidence that the offering of corporate notes should have been registered as a new issue, and a prospectus filed, with the Director of Business Regulation in accordance with §7-11-6. However, no authority exists to support the investors' claim of the right to rescind for violations of these sections or the statute as a whole. The penalty for violation of §7-11-15 is contained within that section and consists of the revocation or suspension of the broker's license or the forbidding of the sale. Aside from similar sanctions outlined in §7-11-3 for a broker's violation of the provisions of the statute or regulations of the director, or for fraudulent behavior, the only other statutory remedies for noncompliance are criminal in nature. *See* §7-11-24.

The investors contend that although the individual violations do not warrant rescission and restitution, the cumulative effect of Coastal's noncompliance with state provisions ought to entitle them to their desired remedy. The case which they cite as authority for this proposition, *Norville v. Alton Bigtop Restaurant, Inc.*, 22 Ill. App. 3d 273, 317 N.E.2d 384 (1974), concerns the Illinois securities law, which largely tracks the federal statute. Based on the similarity, the court in that case stated that the rules and remedies of the federal statute were impliedly applicable under Illinois law, even if not explicitly legislated. The Rhode Island statute, however, is not so closely modeled after the federal law and provides its own remedies. It is well-established rule in this jurisdiction that statutory provisions will not be broadened by judicial interpretation unless the clear purpose of the legislation would fail without the necessary implications. *New England Die Co.* v. *General Products Co.*, 92 R.I. 292, 298, 168 A.2d 150, 154 (1961); *see State* v. *LaPlume*, 118 R.I. 670, 375 A.2d 938 (1977); *Campanella Corp.* v. *Zoning Bd. of Review*, 106 R.I. 495, 261 A.2d 644 (1970). Therefore, we hold that the investors are not entitled to superimpose the relief available under federal law upon the Rhode Island statute which contains explicit remedies for noncompliance with its provisions.

Since it is established that the investors are not entitled to restitution of their funds under either federal or state securities law, we do not here reach the question of priority in the conflict that would have ensued between Heller and the investors had the federal statutory remedy been applied.

However, without regard to any particular statute but under a simple constructive trust theory, the investors insist that the totality of the circumstances, if not Coastal's individual acts, ought to mandate the tracing of their funds to the assets which Heller claims. In order for a constructive trust to arise, actual or constructive fraud must be established through clear and convincing evidence. *Desnoyers* v. *Metropolitan Life Ins. Co.*, 108 R.I. 100, 112, 272 A.2d 683, 690 (1971); *Sterns* v. *Industrial Nat'l Bank*, 96 R.I. 313, 191 A.2d 152 (1963). Again, the trial justice found no clear evidence of any scheme to defraud or specific acts which were fraudulent or misleading on the part of Coastal. As we have previously stated, the investors have not proved legal error on the part of the trial justice with respect to this finding. Consequently, no constructive trust can be imposed on the investors' funds nor can they be traced to the assets which Heller claims. Heller's status as a bona fide purchaser who might cut off the investors' right to trace their funds, *see* 5 Scott, *Trusts* §475 (3d ed. 1967), is thus not called into question.

In the alternative, the investigators argue that Coastal's officers lacked the proper corporate authority to contract with Heller, and that therefore Heller is not entitled to enforce its security agreement. They point to the fact that the secretary's certificate which was presented to Heller indicating that the transaction was authorized could not be supported by the minutes of the directors' meetings specified in the certificate. However, the minutes of meetings both in advance of and subsequent to the meeting in question indicate that the directors had knowledge of the transaction. Moreover, the directors explicitly ratified the prior acts of Coastal's officers at the next annual meeting following the

agreement with Heller. Thus, even in the absence of definite proof of an authorizing vote prior to the execution of the contract, there is sufficient evidence of ratification to support the trial justice's conclusion that the parties had validly contracted. *See generally* 2 Fletcher, *Cyclopedia of the Law of Private Corporations*, §§752, 756-57 (rev. perm. ed. 1969). Therefore, this argument of the investors must fall as well.

We must conclude that the resolution of the conflict between the investors and Heller lies in the status of each as creditor. Clearly, the debentures and notes issued to the investors stated on their face that they would be subordinate to the claims of all other contract creditors. Heller, on the other hand, had performed every act required by statute to obtain a perfected security interest and priority over all unsecured creditors. *See* G.L. 1956 (1969 Reenactment) §§6A-9-203, 6A-9-204, 6A-9-302, 6A-9-304, 6A-9-402. The investors are therefore relegated to filing their claim as general creditors and cannot reach the assets which the receiver holds until Heller's claim has first been satisfied.

The investors' appeal is denied and dismissed, the judgment appealed from is affirmed, and the cause is remanded to the Superior Court for further proceedings.

*Carroll, Kelly & Murphy, Dennis S. Baluch* for Appellants, Joseph E. Conneally and Helen J. Conneally. *John Quattrocchi, Jr., Vincent A. Ragosta, Louis J. Perez, Francis Castrovillari* for other appellant-investors.

*Dick & Hague, William F. Hague, Jr.* for Appellee Walter E. Heller & Company.