518

401 A.2d 432.

THERESA MESSIER *vs*. LEDA SZYMKIEWICZ, ADMINISTRATRIX FOR THE ESTATE OF BELLA M. HARRIS.

RENE MESSIER *v*. LEDA SZYMKIEWICZ, ADMINISTRATRIX FOR THE ESTATE OF BELLA M. HARRIS.

MAY 4, 1979.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

JOSLIN, J.   Following a jury-waived trial in the Superior Court, judgment was entered awarding the plaintiff, Theresa Messier, damages for physical injuries sustained when she slipped and fell on a stairway in premises owned by the defendant's intestate, Bella M. Harris. In a companion case a judgment was entered for the plaintiff's husband for medical bills. The defendant appealed in both cases.

About 1960, plaintiffs rented a furnished top-floor apartment in a three-story tenement building owned by Bella. A single stairway provided the only means of access to and from the top floor. The stairs were covered by small rubber mats that originally had been secured to the stair treads. By 1963, however, the mats were in various stages of disrepair and some were no longer secured to the stairs.

Late one night, in June of that year, as she was proceeding down the stairs to let out the family dog, Theresa tripped on a loose rubber mat covering one of the stairs and fell, injuring

her back.[1] The case was tried and was decided in the Superior Court on the theory that the stairway on which the fall occurred was a common stairway provided by Bella for the common use of her tenants, that it was under her control, and that she knew that some of the rubber mats were loose. The plaintiff, Theresa, also knew the condition of the mats because she frequently swept the stairs and on such occasions would pick up the loose mats, sweep under them, and then replace, but not secure, them to the steps. The parties agree that the proximate cause of the fall was a loose rubber mat.

The rule of law applied by the trial justice was that a possessor of property who rents portions thereof to others, but retains control of a stairway that used in common by all tenants, is under a duty to keep that stairway in a reasonably safe condition for its prospective use by such tenants and is responsible to tenants for injuries resulting from a breach of that duty. *Robitaille* v. *Brousseau*, 115 R.I. 27, 29, 339 A.2d 738, 740 (1975); *Reek* v. *Lutz*, 90 R.I. 340, 344, 158 A.2d 145, 147 (1960).

In order to recover for such a breach, however, a tenant must establish his own freedom from contributory negligence.[2] Whether he has established that freedom is usually a question for the factfinder, *Nelson* v. *Grilli*, 117 R.I. 538, 540, 368 A.2d 1234, 1236 (1977); *McVeigh* v. *McCullough*, 96 R.I. 412, 422, 192 A.2d 437, 443 (1963), which becomes a question of law when the facts "warrant only one con-

---

[1]The present action was commenced in 1964 but, for reasons not clear from the record, was not tried until 1977. During the period that this matter was pending, the comparative negligence statute, G.L. 1956 (1969 Reenactment) §9-20-4, as amended by P.L. 1972, ch. 18, §1, was enacted. That statute, however, applies only to actions brought subsequent to its enactment.

[2]Since this is a case where Theresa entered freely and voluntarily into a situation in which the defendant's negligence was obvious, the controlling principle was assumption of the risk and not contributory negligence. Prosser, *Torts* §68 at 439-57 (4th ed. 1977); *see Kennedy* v. *Providence Hocky Club, Inc.*, 119 R.I. 70, 376 A.2d 329 (1977); *D'Andrea* v. *Sears, Roebuck & Co.*, 109 R.I. 479, 287 A.2d 629 (1972). The case was tried and decided in the Superior Court and was argued in this court, however, on the theory of contributory negligence and we consider it on that basis.

clusion," 117 R.I. at 540, 368 A.2d at 1236 or "are such that a person of ordinary prudence would instantly perceive what to do or what to refrain from doing * * *." *Floyd* v. *Turgeon,* 68 R.I. 218, 224, 27 A.2d 330, 334 (1942).

In this case, however, we need not reach the issue of whether Theresa was contributorily negligent as a matter of law. Instead, our concern is limited to the trial justice's determination that she was not contributorily negligent as a matter of fact. On that question, the trial justice's finding, like his findings on other factual issues, is entitled to great weight and will not be disturbed by us absent a showing that he misconceived or overlooked material evidence or that he was clearly wrong. *Ambrosino* v. *Bevilacqua,* 118 R.I. 369, 375 A.2d 404 (1977); *Agar Supply Co* v. *David-Hodosh Co.,* 115 R.I. 80, 84, 340 A.2d 140, 142 (1975).

A finding is clearly wrong when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *See United States* v. *United States Gypsum Co.,* 333 U.S. 364, 395, 68 S. Ct. 525, 542, 92 L. Ed. 746, 766 (1948); *State* v. *LaRose,* 112 R.I. 571, 313 A.2d 375 (1974); *State* v. *Leavitt,* 103 R.I. 273, 237 A.2d 309 (1968). We are left with such a firm conviction in this case.

This case does not involve merely a landlady who, knowing or chargeable with knowledge of a dangerous condition involving loose mats on a common stairway in her building, fails to remedy that condition. If the landlady's failure to act in this circumstances were the only negligence involved here, then we would agree with the trial justice and with the dissent in this case that Thesesa's continued use of the stairway, even though she knew of the loose mats, would not constitute contributory negligence because the stairway provided the only means of reaching the apartment. *See generally Kanelos* v. *Kettler,* 406 F.2d 951 (D.C. Cir. 1968); *Morehead* v. *Mayron,* 3 Ill. App. 2d 425, 379 N.E.2d 473 (1972); *Rush* v. *Commercial Realty Co.,* 7 N.J. Misc. 337, 145 A. 476 (1929) (assumption of the risk); *Dollard* v. *Roberts,* 130 N.Y. 169, 29 N.E. 104 (1891).

Here, however, the dangerous condition was at least in substantial part created by Theresa, who only a day or two before she fell, removed the loose mats from the stairs, swept the stairs, and then replaced the mats. She may not have been under an obligation to secure the mats to the stairs, but, certainly, if she had acted with a modicum of ordinary prudence and concern for her own safety, she should have instantly perceived that replacing loose mats on the stairs created an undue risk of harm. Moreover, it was that very hazard that caused her to fall and resulted in her injury. When we view her conduct in this light, we are left with the certain and firm confiction that the trial justice mistakenly concluded that Theresa's continued use of the stairway did not constitute contributory negligence.

In each case the defendant's appeal is sustained, and the judgment appealed from is reversed. Each case is remanded to the Superior Court.

MR. JUSTICE KELLEHER, with whom MR. CHIEF JUSTICE BEVILACQUA joins, dissenting. I cannot share the majority's "certain and firm conviction" that the trial justice erred when he ruled that Theresa's claim was not barred by the doctrine of contributory negligence.

Theresa gave the trial justice an insight as to the regularity of at least a portion of her household routine. She always escorted the dog to the street level so that the canine could enjoy a nighttime outdoor romp. She testified further that she cleaned the stairway once a week, either on Friday or Saturday. As Theresa cleaned the stairs, some of the mats would become dislodged, but others, whose glue still retained its adhesive quality, would remain in place. Regularly Theresa would restore the removable mats to their original position. Theresa also stated that prior to the fall, she had been going up and down the stairs without mishap. She emphasized that as she traveled the stairway, she would keep an eye out for a mat that might be out of line even "a little bit." If she found such a condition, she would straighten out the mat. When the trial justice asked Theresa why she pushed the mat back in place, she pointed out that if the mat

was off "a little bit," she would have fallen.

In his bench decision the trial justice found as fact that neither Theresa's knowledge of the dangerous condition in the stairway nor her action in replacing the stair mats was a "proximate cause or a contributing cause to the injury." In taking this position, the trial justice stressed that if the landlady had provided "another alternative way of getting in and out of the premises, you would have a different situation."

The trial justice's reliance on the landlady's failure to provide the Messiers with another means of access to the street reminds one of our holding in *Fuller* v. *Housing Authority*, 108 R.I. 770, 774-75, 279 A.2d 438, 441 (1971), where we said that while a landlord is under a duty to a tenant to remove the accumulations of snow and ice from common passageways, a tenant who has more than one way of ingress to and egress from his tenement could not prevail if, instead of following the shoveled path, he or she chose to travel on some other, yet unshoveled passageway.

In all slip-and-fall controversies involving a tenant's right to use and landlord's duty to maintain a common passageway, contributory negligence or assumption of the risk have been valid defenses. However, in resolving these issues, a critical factor has been whether the tenant has been provided with a convenient alternate route to and from the tenant's premises. Even when a tenant is aware of the dangerous condition of the stairs, he or she is not to be precluded from recovery when the tenant is left with no other reasonable alternative than using the stairs. *Schwab* v. *Allou Corp.*, 177 Neb. 342, 251-52, 128 N.W.2d 835, 841 (1964); *Beck* v. *Dutra*, 129 Vt. 615, 618-19, 285 A.2d 732, 735 (1971); 67 A.L.R.3d 587, 602 (1975).

It has been said that even if a lessee discovers a dangerous condition, he does not necessarily assume the risk of becoming contributorily negligent in dealing with it. Prosser, *Torts* §63 at 408 (4th ed. 1971). The majority's finding of contributory negligence makes one wonder just what were

Theresa's alternatives. Solutions coming to mind run all the way from a termination of the tenancy and a vacating of the third-floor apartment to the adherence to a stay-at-home policy, by which the Messiers would never leave the third-floor premises.

However, there is no need to search for such alternatives. The rule aplicable to a person who finds himself in the same plight as Theresa is expressed in Restatement (Second) *Torts* §473 at 523 (1965): "If the defendant's negligence has made the plaintiff's exercise of a right or privilege impossible unless he exposes himself to a risk of bodily harm, the plaintiff is not guilty of contributory negligence in so doing unless he acts unreasonably." Court, when confronted with a tenant who was injured because he or she had no place to go but the defective way furnished by the landlord, have relied upon this principle. *McKenzie v. Egge,* 207 Md. 1, 11, 113 A.2d 95, 99 (1955); *Lebovics v. Howie,* 307 Mich. 326, 331, 11 N.W.2d 906, 908 (1943); *Jorgensen v. Massart,* 61 Wash. 2d 491, 496, 378 P.2d 941, 943 (1963); *Hape v. Rath,* 492 P.2d 974, 977 (Wyo. 1972).

Here, the Messiers were not required to vacate the apartment because of the landlady's negligent maintenance of the stairway, nor was Theresa obligated to stop using the stairway provided she exercised due care for her safety as she traveled to and from the apartment. Up until the time of the fall, Theresa's use of the stairs with their mats back in place was continuous and injury free. From all that appears, one concludes that Theresa was descending the stairway in her usual fashion when she fell. There is nothing in the record which would indicate that her manner of descent immediately preceding her fall could have contributed to her injury. Consequently, I vote to affirm the findings made by the trial justice.

*Henry H. Katz,* for plaintiffs.

*Moses Kando,* for defendant.