DECISION
This matter came before the Court for a jury-waived trial in March, 2007. After trial and consideration of the post-trial memoranda, the Court enters judgment for the plaintiff against defendant Christy's Auto Sales Rentals, Inc. on both counts.
 Finding of Facts
Crescenzo "Christy" D'Arpino is an owner of property located at 545 Killingly Street in Johnston, Rhode Island. He is also the president and a stockholder of the two defendant-corporations. One of the corporations owns the property at 547 Killingly Street in Johnston, Rhode Island.[1] In August 1992, Mr. D'Arpino was experiencing some problems with the septic drain for property located at 545 Killingly Street. Ricci Drain-Laying Co., Inc. ("RDL") was installing sewers in the nearby streets. Mr. D'Arpino met with Orlando Ricci, the owner of RDL, to ask for help in repairing the drain. It was agreed that RDL would repair the drain at the rate of $145 per hour, though Mr. Ricci could not be sure how long this project would take. RDL had previously done work for *Page 2 
Mr. D'Arpino at a body shop located nearby on Sunnyside Avenue in Johnston, although that bill was never satisfied.
On August 25, 1992, RDL stopped working on the plat on Sunnyside Avenue to begin work on the defendant's property. After several hours, RDL could not find the cause of the blockage. Mr. Ricci met with Mr. D'Arpino to report RDL would need to return the next day as more work was needed to clear the blockage. Mr. D'Arpino instructed RDL to continue work until it cleared the blockage.
On August 26, 1992, the Killingly Street sidewalk was opened up and the property was excavated. Although RDL had dedicated nine man-hours to the project, the blockage still appeared in an uncovered area in Killingly Street. Mr. D'Arpino instructed RDL to continue work until the blockage was cleared.
On August 27, 1992, RDL opened the street and discovered that the drain pipe had been cut near its connection with the sewer line when a new water main was installed in Killingly Street. It would take another day to repair. At the end of the day, Mr. D'Arpino instructed RDL to continue work on the pipe until the blockage was cleared.
On August 28, 1992, RDL replaced the sewer line in Killingly Street resolving the problem. Over the course of the entire four days, RDL dedicated 34 man-hours to the project. RDL incurred expenses of $364 for materials and $350 for a Johnston Police work detail on Killingly Street. As of August 29, 1992, the bill totaled $5,644. In the end, an entirely new drain line was installed. RDL needed to remove a six-inch pipe which ran from the house to the street and replace it with a four-inch pipe. A smaller pipe was required in order to have the gravity pull away from the house and ensure that the pipe was able to fit underneath the water main in the street. *Page 3 
Upon discovery of the cut drain in the middle of Killingly Street, Mr. Ricci showed the cut pipe to Mr. D'Arpino. Upon seeing the cut, Mr. D'Arpino became extremely agitated, and asserted the Providence Water Supply Board should pay for the expense of laying a new line. Mr. D'Arpino telephoned the Providence Water Supply Board to complain directly.
During August 1992, Mr. D'Arpino presented Orlando Ricci with a business card and instructed Mr. Ricci to send the bill to the address on the business card. On September 28, 1992, RDL sent a bill for $5644 to the address on the business card. The bill was typed and mailed by Armando J. Ricci, the son of Orlando Ricci. Armando Ricci hand-delivered a separate photocopy of the bill to Mr. D'Arpino during the next few weeks.
 Analysis and Conclusions of Law
RDL established the existence of a contract with concrete terms and a breach by defendants. The elements of a contract are offer, acceptance, consideration, mutuality of agreement and mutuality of obligation.See Smith v. Boyd, 553 A.2d 131 (R.I. 1989) and Lamoureux v.Burrillville Racing Assn., 91 R.I. 94, 161 A.2d 213 (R.I. 1960). A court must make "predicate findings of offer, acceptance, consideration and breach requisite to determining a breach of contract claim." Gorman v.St. Raphael Academy, 853 A.2d 28, 33 (R.I. 2004). After Mr. D'Arpino asked Mr. Ricci to perform the work and Mr. Ricci provided the corporation's rate, the offer and acceptance were completed. In consideration of the acceptance, RDL labored on the project for 4 days. The parties *Page 4 
mutually agreed on the scope of work, the amount of payment and the task at hand. Indeed, RDL had completed its side of the bargain.
The defendants raised a variety of defenses which will each be considered in turn.
1. The existence of a contract.
The first argument in defendants' memorandum is that no contract was entered into with either named corporate defendant. At trial, defendants claimed the title owner of the property (not named as defendants) are somehow responsible for the debt. According to Mr. D'Arpino's testimony, one defendant-corporation owns the property at 547 Killingly Street, while the property at 545 Killingly Street is owned by Mr. D'Arpino and his wife.[2] Mr. D'Arpino is the president of both defendant corporations and RDL relied on Mr. D'Arpino's representation that he could bind the corporations. Clearly, Mr. D'Arpino could obligate the owners of the property and the corporations to pay the bill.
The defendants focus on who owns the property, but this is not a suit to perfect a mechanics' lien pursuant to RIGL Ch. 34-28. While RDL may have been successful in prosecuting a mechanics lien petition, they chose not to do so and this case sounds in breach of contract. Who owns the property is not relevant as the corporations agreed to be bound for work done by RDL, regardless of where the work was done.
Mr. D'Arpino specifically instructed RDL to send the bill to the Christy's Auto Sales Rentals, Inc., at the address Mr. D'Arpino provided on a business card. RDL complied with Mr. D'Arpino's instructions. There is no need to infer that Mr. D'Arpino was binding the corporation, he did so explicitly and never denied doing so. *Page 5 
 2. Corporate authority.
Defendants allege that RDL failed to establish that Mr. D'Arpino had authority to bind the corporation. Mr. D'Arpino's assurances that the corporation would pay the bill, and the forwarding of the corporate card with the address, were sufficient indicia for RDL to rely on, and to bind the corporation. RDL believed Mr. D'Arpino's assurances that the corporation would pay. Mr. D'Arpino's apparent authority was sufficient to bind the corporation. 731 Airport Associates, LP v. H M RealtyAssociates, LLC, 799 A.2d 279, 283 (R.I. 2002). Even had there not been clear proof, the corporate owner appears to have ratified the contract by allowing the work to continue and never questioning it at any time pretrial.[3]
 [E]ven in the absence of definite proof of an authorizing vote there is sufficient evidence of ratification to support the trial justice's conclusion that the parties had validly consented. Coastal Finance Corporation v. Coastal Finance Corporation of North Providence, 120 R.I. 317, 327, 387 A.2d 1373 (R.I. 1978).
Mr. D'Arpino had the capacity to bind the corporate defendants and did so.
Secondly, defendants question whether a sufficient meeting of the minds occurred. Citing the seminal case of Bailey v. West, 105 R.I. 61,249 A.2d 414 (1969) the defendants review the requirements of an implied contract, all being present herein.[4] There must be a mutual agreement or consent, the intention of the parties and a meeting *Page 6 
of the minds as to the intent and purpose. All have been found to exist in the implied contract for repair of the defendants' drainpipe herein.
3. Amount of the debt.
Next, defendants claim the agreement was for $500 for the entire job. Two credible witnesses testified for RDL that the parties agreed to an hourly rate. Initial negotiations with Orlando Ricci were based on another estimate for a higher hourly rate. After negotiation, Mr. Ricci agreed to the $145 per hour rate and the defendant acquiesced. Each day the defendant agreed that RDL should return. The defendants' assertion that $500 should be the total amount of the bill is simply not credible, particularly considering that the project took several days to complete, and Mr. Ricci (experienced in the field) recognized that he did not know the extent of the work required when the job commenced. The $145 per hour rate was listed on the bill which was prepared promptly after the work was completed and was never questioned by Mr. D'Arpino or defendant corporations (until trial). Moreover, Mr. D'Arpino never questioned the extent of the protracted work which RDL performed over the 4 days, nor did he ever dispute the total amount of the bill.
Mr. D'Arpino claims the cost was to be $500. However, his credibility is further diminished as he never paid the $500, nor did he pay $150 for a valve which was repaired on another property by RDL several days earlier. Mr. D'Arpino acknowledged he received the bill within 3 to 4 weeks of the original work.[5] *Page 7 
The defendants claim that a governmental water department agreed to pay the bill as the drain pipe had been sawed off. All that may be true, but RDL's contract was not with the water department. RDL never agreed to contract with a governmental entity or to wait for payment from any third party. When Mr. D'Arpino first discovered the cut pipe, he contacted the Providence Water Supply Board directly and urged them to make payment while at the site. Years passed and defendants paid nothing, nor did they process any claims with the water departments. There was never any agreement that RDL would process the claim or await payment.
The amount of the bill, and the principal amount of the debt as of September 28, 1992 was $5644.
4. The book account claim.
Count 2 of the complaint is for book account. Our high court recently discussed the required elements of a book account (in review of a grant of summary judgment):
 The plaintiff amply supported his motion for summary judgment, whereas defendant did not present any contradictory evidence. We have stated in the past that in actions on book account the litigant opposing a motion for summary judgment has the burden of proving the existence of a disputed material issue of fact and cannot rest on mere allegations or denials in the pleadings. We agree with the trial justice who reasoned that once a plaintiff came forward with a facially valid book account claim the defendant was required to come forward with competing evidence, such as an affidavit of another doctor stating that the treatment rendered by plaintiff was pointless. Accordingly, we deny defendant's appeal with respect to the entry of summary judgment for the principal amount of the indebtedness. Johnson v. Howarth, 700 A.2d 612 (R.I. 1997), citations deleted.
Here, RDL placed the bill into evidence, verified the bill as being sent timely, for work actually completed, and remaining unpaid. RDL has submitted a facially valid book *Page 8 
account claim. The competing evidence has already been rejected by the Court, hence the account stands. RDL has met its burden on the book account claim against Christy's Auto Sales Rentals, Inc.
5. Liability of the corporate defendants.
In this action, plaintiffs seek to recover only from the two named corporate defendants: Christy's Auto Sales, Inc., and Christy's Auto Rentals, Inc. Mr. D'Arpino was not named personally.
In passing the business card to RDL, Mr. D'Arpino only obligated one corporation, Christy's Auto Sales Rentals, Inc. Only this corporation agreed to pay; only this corporation has been billed; only this corporation is indebted. At trial, RDL failed to establish a claim against Christy's Auto Sales, Inc., so judgment shall enter against Christy's Auto Sales Rentals, Inc. only.
6. Interest
One further issue remains, as counsel disputed the applicability of prejudgment interest. Rhode Island General Laws section 9-21-10 requires the addition of prejudgment interest and post-judgment interest. The statute contains one notable exemption "This section shall not apply until entry of judgment or to any contractual obligation where interest is already provided."
The bill of September 28, 1992, indicates "Interest of 1½% INALcharged monthly on the unpaid balance after 30 days. . . ." Clearly, the interest amount listed on *Page 9 
the invoice applies on the book account claim. Pursuant to the statute, the amount of the interest stated on the bill shall apply on the contract claim as well.
Prejudgment interest of 1½% from October 28, 1992, not compounded, shall be added by the Clerk to the damages of $5644.
 Conclusion
Judgment shall enter for the plaintiff, Ricci Drain-Laying Co. Inc., against Christy's Auto Sales Rentals, Inc., on counts 1 and 2 for the amount of $5644 plus prejudgment interest at the rate of 1½% from October 28, 1992.
Judgment shall enter for the defendant, Christy's Auto Sales, Inc., on counts 1 and 2, as the plaintiff has failed to establish its case against this particular defendant.
Counsel for the plaintiff shall prepare an appropriate judgment form.
[1] The house at 545 Killingly Street is owned by Mr. D'Arpino and his wife.
[2] No deeds or title search were ever introduced.
[3] Defendant cites Brimbeau v. Ausdale, 119 R.I. 14, 376 A.2d 1058
(R.I. 1977) to allege that RDL must make an affirmative showing that the corporation agreed to incur the debt. Brimbeau is limited to personal injury actions sounding in negligence. It holds "a corporation is liable only for those torts committed by agents acting within their scope. . . ." Brimbeau, 114 R.I. at 26, emphasis added, citations deleted.
[4] Ironically, Bailey v. West, 105 R.I. 61, 249 A.2d 414 (1969) also outlines the elements of a quasi-contract, where an express contract was not intended, but a benefit was conferred and "it would be inequitable to retain the benefit without payment," Bailey at p. 67. As this Court finds a contract was formed, it need not reach the issue of quasi contract or unjust enrichment.
[5] At first, Mr. D'Arpino claimed that tenants lived in the address which was noted on the bill, and that he would not have received the bill. Later, he acknowledged that he did receive the bill made out to the defendant corporations.

 *Page 1