JOHN BUFFUM *vs.* YORK MANUFACTURING COMPANY.

Suffolk.    November 15, 1899. — March 3, 1900.

Present : HOLMES, C. J., MORTON, BARKER, HAMMOND, & LORING, JJ.

*Breach of Contract — Evidence — Letters as Admissions and as affecting Credibility of Witnesses — Damages.*

In an action for breach of an agreement, letters written, after the controversy had arisen, by the plaintiff to the defendant, a corporation, and letters in reply thereto written in its behalf by the defendant's general manager, who in its behalf took part in and conducted the correspondence with respect to the transaction in controversy, are rightly admitted in evidence, those written by the plaintiff being competent so far as they tend to qualify, explain, or aid in the

construction of those written in the defendant's behalf, and the latter being competent as its admissions; and the defendant is not prejudiced by the instruction that the letters are to be considered by the jury only so far as they contain statements inconsistent with the testimony of the writers, both of whom were witnesses, and that the jury may consider the letters so far as they affect the credibility of those witnesses.

If A. is employed by B. to sell machines made by the latter, and is to be paid as a commission the difference between the selling price which is fixed by him and a price named by the defendant, and B agrees not to sell machines to A.'s customers without his consent at prices less than those named by him to them, and after A. has brought the machine to the notice of C., B sells to C. an incomplete machine for a price a little more than that named by A. for a complete machine without his consent, thus depriving him of a portion of his commission, in an action by A. against B. for breach of the agreement, B is not entitled to have the jury instructed "that there was no evidence that the machine could have been sold for more than the price for which the defendant sold it, and that if they should find for the plaintiff their finding must be for no more than nominal damages."

CONTRACT. The fifth count of the declaration, which is the only one material to be stated, was as follows : "And the plaintiff says the defendant is a manufacturer of machines for making artificial ice ; that on or about November, 1892, it entered into a contract with the plaintiff, whereby it agreed to make the plaintiff its agent to procure purchasers for said machines in and about Boston, and to pay him for his services in procuring such purchasers in said territory, as a commission, a price varying according to the size and capacity of said machines ; that the amount which the plaintiff was to receive as said commission was to be determined by fixing a price which the defendant was to receive for each of the sizes sold by it, and the plaintiff was to be allowed to fix a sum in advance as the selling price of said machines, varying according to the sizes and capacity ; that the defendant should protect the plaintiff in the matter of prices, and should not sell any machines to the plaintiff's customers at prices less than those named by the plaintiff to said customers, without his consent; that for a thirty-ton machine, said advance was not to exceed $2,500; that the plaintiff, on or about November 12, 1894, procured the Dorchester Hygeia Ice Company, of said Boston, as a purchaser of a thirty-ton machine, and fixed the price to be paid by said purchaser at $2,500, in advance of the price to be received by said defendant for a machine of said size, in accordance with said agreement; that the defendant thereupon, in violation of its said agreement, proceeded to complete said sale

at a price less than the price given to said Dorchester Hygeia
Ice Company by the plaintiff, and at a price which deprived the
plaintiff of a large portion of his commission upon said sale under
said agreement, without the consent or knowledge of the plain-
tiff; that by reason of said breach of said agreement, the defend-
ant became liable to the plaintiff in damages for the loss of his
commission upon said sale, which he would have received under
said agreement, and for compensation for his services in procur-
ing said purchaser, and for all damages sustained by the plaintiff
caused by the breach of said agreement, which, the plaintiff avers,
is said sum of $2,500; and that the defendant owes the plaintiff
said sum of $2,500, with interest thereon from the time of said
sale."

At the trial in the Superior Court, before *Maynard*, J., the
jury returned a verdict for the plaintiff on the fifth count in the
sum of $1,620; and the defendant alleged exceptions, which
appear in the opinion.

*J. J. Higgins*, for the defendant.

*J. F. Wiggin*, for the plaintiff.

LORING, J.   The defendant's first exception is to the admis-
sion in evidence of five of its letters written to the plaintiff, dated
May 9, 11, October 31, November 6, and November 18, 1895, and
of four letters of the plaintiff, to which those five letters were
answers; namely, one of May 8, answered by the defendant's let-
ters of May 9 and 11; one of October 22, answered by the letter
of October 31; one of November 2, answered by the letter of
November 6; and one of November 12, answered by the letter
of November 18.   The defendant also excepted to one letter
written by the plaintiff, dated June 29, which does not seem to
have been answered by the defendant.   These letters were in-
troduced as part of the plaintiff's original case, and were objected
to by the defendant as letters "written after the second machine
had been sold and delivered to the purchaser."   The defendant
now seeks to support its objection to the admission of the plain-
tiff's letters on the ground that they were written after the con-
troversy had originated, and were objectionable as giving the
plaintiff the unfair advantage of a written argument prepared by
himself; and it undertakes to support its objection to the intro-
duction of its own letters, on the authority of *Stiles* v. *Western*

*Railroad*, 8 Met. 44; *Sumner* v. *M'Neil*, 12 Met. 519; *Tuttle* v.
*Brown*, 4 Gray, 457. These. cases hold that declarations made
by an agent after the termination of his agency are not admis-
sible to affect the rights of his former principal; it is evident
that the objection made at the trial was made on the supposition
that these cases were applicable; no objection was made at the
trial to the introduction of all letters written on one side and
the other prior to the sale in question, and objection was made
to all letters written after the sale was made. But when, as in
the case at bar, the letters are written in behalf of the defendant
corporation by its general manager, who took part in its behalf
in the transactions in controversy, and who, as general manager,
conducted the correspondence in its behalf with respect to those
transactions, the letters written by him in the defendant's behalf
are competent as its admissions. With the single exception of
the plaintiff's letter of June 29, the plaintiff's letters were letters
to which the defendant's were answers, and were competent so
far as they tended to qualify, explain, or aid in the construction
of those letters. *Fearing* v. *Kimball*, 4 Allen, 125. *Trischet* v.
*Hamilton Ins. Co.* 14 Gray, 456. The objection that such letters
give to the writer the unfair advantage of making an argument
in his own behalf was fully considered in those cases, and it
would serve no useful purpose to repeat here what was said there.
The letter of June 29 does not seem to have been answered by
the defendant, but it had no bearing on the litigation, and the
defendant could not have been injured by its introduction.

In his charge to the jury, the presiding judge instructed them,
that the letters were to be considered only so far as they con-
tained statements inconsistent with the testimony of the writers
of the letters; namely, the plaintiff and the defendant's general
manager, both of whom had testified as witnesses on the stand;
and that they might consider the letters so far as they affected
the credibility of those witnesses. The defendant was not in-
jured by this instruction. It was certainly proper for the jury
to consider the letters in that connection if they did contain in-
consistent statements, or if they contained statements which the
jury might think inconsistent; and they did contain such state-
ments. The jury might properly have been allowed, under
proper instructions, to consider these letters as admissions of

the defendant, as well as statements affecting the credibility of the witnesses who wrote them.   The only exception taken to the charge to the jury as to these letters was the exception to the refusal of the court to rule that " there was nothing on which the jury could find that the defendant had made any statement in conflict with any previous statement, or with any statement or claim which it made at the trial."

The defendant excepted to the ruling of the judge refusing " to instruct the jury that there was no evidence that the second machine could have been sold for more than the price for which the defendant sold it, namely, $26,200, and that if they should find for the plaintiff on the fifth count, their finding must be for no more than nominal damages."   No exception was taken to the instructions given as to the measure of damages ; and the correctness of the instructions given, except so far as they failed to give the instruction requested, is not before this court.   The plaintiff was entitled to reasonable compensation for his services in procuring the sale of the second machine, if he was not entitled to all that the defendant got for the incomplete second machine, on the basis of $26,000 for a completed machine.*

*Exceptions overruled.*

* It appeared that the plaintiff sold one machine to the Dorchester Hygeia Ice Company for $28,500, the price of which had been quoted by the defendant to the plaintiff at $26,000, and the defendant thereafter paid the plaintiff on account thereof the sum of $2,500; and that subsequently a second machine of the same size as the first was sold to the same purchaser for $26,200. The plaintiff offered evidence tending to prove that the Dorchester Hygeia Ice Company, at the time of the setting up of the first machine, contemplated putting in a second machine if the first should prove satisfactory; that certain parts which were furnished with the first machine were sufficient for both machines; and that the difference in price was accounted for by the fact that certain parts to be furnished as a part of the contract for the first machine were omitted in the contract for the second machine.   It appeared that the amount actually received by the defendant from the Dorchester Hygeia Ice Company on account of the second machine was $20,000.