NATIONAL WASTE CO., Inc., v.
SPRING PACKING CORP.
No. 10654.

United States Court of Appeals
Seventh Circuit.
Nov. 18, 1952.

Rehearing Denied Dec. 23, 1952.

Writ of Certiorari Denied March 9, 1953.
See 73 S.Ct. 649.

Stephen A. Mitchell, William I. Conway, Robert J. Downing, Charles J. Merriam, Chicago, Ill., for appellant.

Jack I. Levy, Chicago, Ill., Bartholomew A. Diggins, Washington, D. C. (Strauch, Nolan & Diggins, Washington, D. C., and Sonnenschein, Berkson, Lautmann, Levinson & Morse, Chicago, Ill., of counsel), for appellee.

Before MAJOR, Chief Judge, and FINNEGAN and SWAIM, Circuit Judges.

MAJOR, Chief Judge.

This suit charged defendant with the infringement of Patent No. 2,499,333, applied for by George Schulein May 12, 1948, and issued to plaintiff February 28, 1950. The patent (sometimes referred to as the Schulein patent) is entitled "Spring Packing," and relates to packing material of waste having a plurality of springs embedded therein. The product is known as spring journal box packing, called "spring packing," and is used to pack journal boxes on railroad cars. It consists of common waste in which the metallic springs are embedded.

Defendant answered, denying infringement and alleging invalidity of the Schulein patent. This answer was subsequently withdrawn and superseded by an answer which generally denied infringement and a counterclaim which alleged, so far as now material, that defendant was the owner of the patent even though it had been issued to the plaintiff and that in any event plaintiff was estopped to assert the Schulein patent against defendant. Defendant also prayed that the court direct a separate trial on the issue of title independently of the issues of invalidity and infringement. Plaintiff by answer denied the allegations of the counterclaim and that defendant was entitled to the relief therein prayed.

A separate trial was had solely on the issue of title, as requested by the defendant. The court made its findings of fact, entered its conclusions of law and, predicated thereon, entered a decree June 5, 1952, by which plaintiff was adjudicated to be the legal and equitable owner of the patent in suit and that it was not estopped to assert said patent against the defendant. Defendant's counterclaim was dismissed. It is from this adverse decree that defendant brings the case to this court.

It is well to keep in mind that neither the issue of the validity of the Schulein patent nor its infringement by the defendant is before us. The sole issue is whether the District Court erroneously decreed title to the patent in the plaintiff and that plaintiff was not estopped to assert infringement against the defendant. Such being the issue, nothing which we say or hold is to

15

be taken as any indication of our view relative to the question of the validity of the Schulein patent or its infringement by the defendant. The findings made by the trial court, in considerable detail, outline the relation existing between plaintiff and defendant. It is not plain from defendant's brief in this court whether it would have us reject the findings as clearly erroneous. It is certain that no particular finding is made the subject of attack. Rather, defendant appears to vacillate between a contention that the findings are erroneous as a whole without pointing to any particular finding and its theory that the decree is erroneous as a matter of law notwithstanding the findings.

For some thirty years prior to the institution of this suit, plaintiff was engaged in the manufacture of spring packing on waste machines and spring machines, and defendant (or its predecessors) was engaged in the business of selling, among other things, spring packing. A contractual relation was established between the parties in the form of written agreements which covered a period from July 15, 1919 to September 1, 1941. By these agreements defendant granted to plaintiff the right to manufacture spring packing under patents owned by the former, with agreements that the product thus manufactured by plaintiff was to be sold to the defendant. Subsequent to September 1, 1941, no written agreement was in existence between the parties although they continued to do business apparently upon a basis similar to that which had existed during the time of the written contracts. There is no proof, as the court found, of any oral agreement between the parties after the expiration of the last written contract. Prior to March 12, 1948, all of the spring packing sold by defendant was manufactured by plaintiff. Subsequently, plaintiff ceased to be the sole supplier of spring packing to the defendant, although plaintiff continued to manufacture spring packing, a part of which was sold to defendant until December 29, 1949. Each of the parties had its separate place of business and each its separate officials. Neither had any control or authority over the employees of the other. Plaintiff purchased the raw material which it processed in its plant with its own machinery and equipment to the point where it was to be converted into spring packing, and the concluding part of the process was performed by plaintiff on machines owned and furnished by the defendant. The product thus manufactured by the plaintiff was sold to the defendant at a price usually on a cost-plus basis, as agreed to by the parties formerly in the written agreements and subsequently as agreed to orally. The product thus manufactured by plaintiff and supplied to defendant was sold by the latter to the railroads. Payment was made to plaintiff after the defendant had collected from the railroads.

George Schulein (patentee) was an employee of plaintiff and had been since 1923, and during the period relevant to this litigation was its master mechanic. He in the main was charged with the responsibility of caring for plaintiff's machinery and equipment, as well as the spring packing machines owned by defendant but furnished by it to plaintiff. Like other of plaintiff's employees he was paid by plaintiff and worked under plaintiff's direction and control. There appears to have been a continuing effort, co-operated in by both parties, to improve the spring packing machinery. We gather from reading the testimony that this responsibility was placed upon Schulein by reason of the position which he occupied with plaintiff. Suggestions were freely exchanged, some of which were accepted, others rejected. Most of the ideas emanating from plaintiff appear to have been those of Schulein, its mechanic.

We think it not necessary to discuss numerous patents owned by the defendant and mentioned in the case. Most of such patents, in fact all of those in existence at the time the first contractual relation was established between the parties, have long since expired and all of them, so far as we are able to discern, were upon a machine as distinguished from a product such as that in suit. Obviously, any improvement in the product which called for a change in a machine was a matter to be decided by the defendant as owner of the

machine. That it made efforts to improve its machines and spent considerable money in so doing is not disputed.

The court found that there was no proof that plaintiff was defendant's agent, no proof that any confidential relation existed between them and no contractual duty to assign the patent in dispute. We think this finding is clearly correct and comes close to being decisive of the issue presented. Plaintiff makes no direct attack upon this finding but, notwithstanding, argues that the relation between the parties was one of the "highest confidence and complete cooperation." Exactly what is encompassed in this argument is difficult to discern. If it means that a confidential relation existed between the parties as that term is used in the cases, the court has found to the contrary; if it means only that there was a close, friendly, cooperative attitude displayed by the parties, it is not sufficient to be of any benefit to the defendant. Of course, as we have stated, the parties cooperated in an attempt to improve the machinery and the product. Such an attitude was of mutual benefit to the parties, as much for the good of one as the other. An improved product would result in greater sales by the defendant, thereby increasing the outlet for plaintiff's product. This arrangement, however, for the mutual benefit of the parties does not show that it was one of confidential relation.

Defendant makes an argument which we think militates against rather than supports its position. It is asserted that in 1934 defendant's spring packing machine required a coil spring called a fishhook end, and that Schulein developed a change in this spring in that he closed the end in a loop, as shown in his patent. This statement, as we understand, means that Schulein invented the spring shown in his patent in 1934 (fourteen years before application was filed). The statement continues that Schulein took this spring to the defendant, who studied it and also investigated the possibility of making a machine which would manufacture spring packing with that form of spring. Plaintiff disputes that the spring thus disclosed to the defendant is that described in the patent. How-

ever that may be, the record plainly discloses that defendant failed to design a machine embodying the feature thus suggested by Schulein; in fact, it was rejected by the defendant. Assuming that plaintiff or its mechanic, Schulein, was under some obligation to defendant, it would seem that such obligation was discharged if the improvement was shown to the defendant and rejected and that Schulein was thereafter free to make such use of it as he or his employer (plaintiff) saw fit.

Of the numerous cases cited by the defendant, those represented as most pertinent are Davis v. Hamlin, 108 Ill. 39, 45; Grip Nut Co. v. Sharp, 7 Cir., 150 F.2d 192, 197, and National Wire Bound Box Co. v. Healy, 7 Cir., 189 F. 49, 53. No good purpose could be served in analyzing or discussing these cases. A reading of them plainly discloses that they are without application to the facts as found in the instant case, which findings, as noted, we discern no reason to reject. One who lays claim to property held by another under a theory of constructive trust arising from a confidential relation is charged with the duty of establishing such trust by clear and convincing proof. Jacoby v. Shell Oil Co., 7 Cir., 196 F.2d 855, 858. We are satisfied that defendant in the instant case has failed to carry such burden and that its proof was inadequate to establish the existence of a relationship which would entitle it to an award of title to the Schulein patent.

In view of what we have said and the findings of the District Court, we think defendant's contention that plaintiff is estopped to assert the Schulein patent against it must also be denied. The only case cited by the defendant in support of this contention is Lukens Steel Co. v. American Locomotive Co., 2 Cir., 197 F.2d 939. There, the Court of Appeals approved of findings made by the District Court which supported the estoppel. Here, the District Court has made findings which, in our view, will not do so. Moreover, the dissimilarity of the facts in the Lukens case makes it of little aid to the defendant here.

Other questions raised by the defendant relative to the admissibility of testimony have little, if any, merit. We th

need not be discussed because in any event they would not alter our conclusion.

The judgment appealed from is

Affirmed.