MARY STARZEC ET AL. *v.* HELEN KIDA, EXECUTRIX (ESTATE OF CLARA M. STARZEC)

COTTER, C. J., PETERS, HEALEY, PARSKEY and ARMENTANO, Js.

Argued November 7, 1980—decision released January 27, 1981

*Gerald S. Sack,* with whom, on the brief, was *Edward S. Ludorf,* for the appellant (defendant).

*Morton E. Cole,* with whom, on the brief, was *Cyril Cole,* for the appellees (plaintiffs).

COTTER, C. J. The defendant appeals from the trial court's imposition of a constructive trust in favor of Walenty and Catherine Starzec's children, the stepchildren of the defendant's decedent, Clara Starzec. The plaintiffs are the four children of Walenty and Catherine.

Walenty Starzec and his first wife Catherine purchased a three-family dwelling at 225 Stanley Street, New Britain, as joint owners with rights of survivorship. Upon Catherine's death Walenty became the sole owner of the real estate.

On November 12, 1949, Walenty married a widow, Clara Sliwa Moskal, the defendant's decedent. They resided at 225 Stanley Street during the eleven years of their very happy, close, loving marriage. However, they kept their property separate.

On Friday, February 17, 1961, Walenty knew he was dying of cancer. He telephoned his eldest daughter, Mary, and asked her to come to his home and witness what he and Clara were going to do with the house. On the same day, Mary came to Walenty's house, and witnessed an oral agreement between Walenty and Clara, in which Clara promised to leave Walenty's home to his children upon her death. Chester Sledzik, an attorney, then arrived to prepare Walenty's will. After the attorney left, Clara repeated her promise in the presence of Walenty and Mary.

At trial, Sledzik testified that Walenty told him that he was sick, old and could not come to the lawyer's office, but that he wanted the will executed as quickly as possible because "he was going to be

dead on Monday." On the following day, when the lawyer returned, Walenty executed a will which on its face gave all his real property outright to Clara without limitation, and which named Clara executrix and the plaintiffs his residuary beneficiaries. At the same time, Clara executed a separate will, in which she bequeathed her entire estate to Walenty. Walenty died on Monday, as he had predicted. Clara held title to the real estate upon Walenty's death.

Clara executed a new will on March 25, 1965. The plaintiffs only learned about this will after she died on October 3, 1973. It gave twenty-seven small bequests of cash to various individuals, including two of the plaintiffs. A residuary clause gave the remainder of Clara's estate including her interest in 225 Stanley Street to her niece and executrix, the defendant. On February 22, 1974, the plaintiffs presented the defendant with their claim against Clara's estate for the real property at 225 Stanley Street. When the defendant disallowed the claim, the plaintiffs petitioned the Superior Court for a judgment declaring them to be the lawful owners of the real estate. Following a trial, the court found: that a confidential relationship permeated the agreement between Clara and Walenty to leave 225 Stanley Street to his children; that Clara abused this confidential relationship by failing to abide by her promise; and that allowing the defendant to retain the property would result in unjust enrichment. The court imposed a constructive trust and rendered judgment for the plaintiffs.[1]

---

[1] The trial court, citing *Hieble* v. *Hieble,* 164 Conn. 56, 62, 316 A.2d 777 (1972), stated that once a confidential relationship has been established, substantial authority holds that the party opposing a constructive trust has the burden of negating the constructive trust by clear and convincing evidence. The defendant does not object to

Equity employs the constructive trust to remedy the unjust enrichment which results when a testator leaves property to a person in reliance on that person's subsequently disregarded promise to convey the property to the testator's intended beneficiary. *Redke* v. *Silvertrust,* 6 Cal. 3d 94, 490 P.2d 805 (1971), cert. denied, 405 U.S. 1041, 92 S. Ct. 1316, 31 L. Ed. 2d 583 (1972); *Buckingham* v. *Clark,* 61 Conn. 204, 23 A. 1085 (1891); *Dowd* v. *Tucker,* 41 Conn. 197, 205 (1874); *Olsen* v. *First National Bank,* 76 S.D. 605, 83 N.W.2d 842 (1957). See comment, 27 Yale L.J. 389 (1918).

Sound policy seeks to safeguard titles to land and frustrate fraudulent claims against the estates

---

this statement. It is clear, however, that the trial court did not relieve the plaintiffs of their burden of proving the existence of a promise or agreement to leave 225 Stanley Street to Walenty's children upon Clara's death. *Taylor* v. *Bunnell,* 211 Cal. 601, 296 P. 288 (1931); *Sylvester* v. *Smith,* 296 Mich. 571, 296 N.W. 682 (1941); *Boatman* v. *Berg,* 176 Mont. 208, 577 P.2d 382 (1978); *Saunders* v. *Visser,* 20 Wash. 2d 58, 145 P.2d 898 (1944); 89 C.J.S., Trusts § 155, p. 1077.

Courts consider two distinct relationships "confidential" in the context of constructive trusts. In the first, one party is under the domination of another. In the second, circumstances justify a party's belief that his or her welfare or instructions will guide the other's actions. See *Wimmer* v. *Wimmer,* 287 Md. 663, 668–69, 414 A.2d 1254 (1980). In relationships where one party is a legal fiduciary; *McFail* v. *Braden,* 19 Ill. 2d 108, 166 N.E.2d 46 (1960); or completely dominates the other; *Francois* v. *Francois,* 599 F.2d 1286 (3d Cir. 1979), cert. denied, 444 U.S. 1021, 100 S. Ct. 679, 62 L. Ed. 2d 653 (1980); any transfer between them may impose upon the fiduciary or dominant party the burden of proving that the transfer did not abuse the relationship. But where the surviving spouse is a natural object of the testator's bounty and the confidential relationship rests exclusively upon (1) the natural inclination to repose great confidence and trust in a spouse, (2) the spouse's implicit reassurances of faithfulness, and (3) the testator's knowledge of his terminal illness; *Hieble* v. *Hieble,* supra, 61; the surviving spouse *does not* have the burden of justifying every benefit received under the deceased spouse's will.

of deceased persons.[2]  Therefore, before a court imposes a constructive trust upon real property on the ground that one deceased failed to fulfill a promise to another, the facts from which such trust may be implied should be clearly and satisfactorily established.  Cf. *Wilson* v. *Warner,* 84 Conn. 560, 564–65, 80 A. 718 (1911).[3]

The defendant does not seriously dispute that a confidential relationship existed between Walenty and Clara.  Moreover, she admits that Clara abused the confidential relationship if Clara promised Walenty that she would leave the property to his children.

The defendant argues that Clara's declarations[4] taken by themselves are unclear, meaningless, or at best ambiguous, that the trial court erred in admit-

[2] The statute of frauds and the statute of wills seek to effectuate the policies of safeguarding titles and frustrating fraudulent claims. Those statutes, however, do not apply to constructive trusts, which are implied by operation of law.  *Cohen* v. *Cohen,* 182 Conn. 193, 202, 438 A.2d 55 (1980); *Fisk's Appeal,* 81 Conn. 433, 437–39, 71 A. 559 (1908).

[3] There is substantial authority which requires clear and convincing evidence of facts needed to establish any constructive trust.  See *National Waste Co.* v. *Spring Packing Corporation,* 200 F.2d 14, 16 (7th Cir. 1952), cert. denied, 345 U.S. 909, 73 S. Ct. 649, 97 L. Ed. 1344 (1953); *Bramlett* v. *Selman,* 268 Ark. 457, 597 S.W.2d 80 (1980); *Pantano* v. *Obbiso,* 283 Or. 83, 580 P.2d 1026 (1978); *Coastal Finance Corporation* v. *Coastal Finance Corporation of North Providence,* 120 R.I. 317, 387 A.2d 1373 (1978); Bogert, Trusts & Trustees (2d Ed. 1960) § 472; but see *Page* v. *Clark,* 197 Colo. 306, 592 P.2d 792 (1979); 5 Scott, Trusts (3d Ed. 1967) § 462.6.  We do not decide what standard of proof to require before courts may impose constructive trusts in cases where the transferee or transferor survive.

[4] In this action against Clara's executrix, Clara's declarations were admissible under General Statutes § 52-172, a broadly interpreted, remedial statute, generally admitting the declarations of deceased persons in actions by or against their representatives.  *Plisko* v. *Morgan,* 148 Conn. 510, 511–12, 172 A.2d 621 (1961); *Facey* v. *Merkle,* 146 Conn. 129, 133–34, 148 A.2d 261 (1959); *Walter* v.

ting certain declarations of Walenty, and that without the disputed declarations there is insufficient evidence to support the trial court's determination that Clara agreed to leave 225 Stanley Street to Walenty's children and hence that the court erred in imposing a constructive trust.

The defendant's argument underestimates the weight of Clara's declarations. Its suggestion that Clara's declarations should be "taken by themselves" ignores the general principle "that the whole of a verbal utterance must be taken together." (Italics omitted.) 7 Wigmore, Evidence (Chadbourn Rev. 1978) § 2094, p. 604. Although no generally accepted formula defines the boundary between separate utterances and "the whole of an utterance"; 7 Wigmore, op. cit. § 2119, p. 670; a question and its response; *Engle* v. *Conti*, 78 Conn. 351, 353, 62 A. 210 (1905); *Barnum* v. *Barnum,* 9 Conn. 241, 248 (1832); *Phelps* v. *Foot,* 1 Conn. 387, 391 (1815); and other forms of dialogue; *State* v. *Tropiano,* 158

*Sperry,* 86 Conn. 474, 478, 85 A. 739 (1912); *Bissell* v. *Beckwith,* 32 Conn. 509, 516 (1865); Holden & Daly, Connecticut Evidence § 94; Tait & LaPlante, Handbook of Connecticut Evidence § 11.8.

General Statutes § 52-172 states in relevant part: "In actions by or against the representatives of deceased persons, . . . the entries, memoranda and declarations of the deceased, relevant to the matter in issue, may be received as evidence."

This section encompasses all ordinary modes of communication, including dialogue where one side of a conversation would be unintelligible without also admitting the other. *Facey* v. *Merkle,* supra, 134; *Woodward* v. *Waterbury,* 113 Conn. 457, 465, 155 A. 825 (1931).

The legislature enacted the predecessor of § 52-172 in 1850, two years after abolishing the common-law ban on testimony by a party, in order to prevent living parties from enjoying an unfair advantage in actions by or against the representatives of deceased persons. *Rowland* v. *Philadelphia, Wilmington & Baltimore R.R. Co.,* 63 Conn. 415, 416–17, 28 A. 102 (1893). Most other states attempted to remove the representatives' disadvantage by excluding the living party's testimony of the transaction with the deceased. Tait & LaPlante, loc. cit.

Conn. 412, 420, 262 A.2d 147 (1969), cert. denied, 398 U.S. 949, 90 S. Ct. 1866, 26 L. Ed. 2d 288 (1970); *Gray* v. *Greenblatt,* 113 Conn. 535, 538–39, 155 A. 707 (1931); may form one statement.[5] To the extent an admissible answer incorporates the question to which it responds or depends on the question for its meaning, it makes the question admissible. *Engle* v. *Conti,* supra.[6]

In the dialogue leading to Clara's promise, Walenty incorporated his statement, "I decided to give the property at 225 Stanley Street, for life use to Clara, as long as she lives and then she promises me to give it back to the children," into his question, "Is that right, Clara, you promised?" Clara's answer, "Walenty, on my honor before God, your children will have it after I'm gone," becomes intelligible in the light of Walenty's question. Hence, the trial court properly admitted Walenty's part of this dialogue. *Engle* v. *Conti,* supra.

This colloquy also illuminates the conversation after the lawyer left, in which Walenty stated, "Well, Clara, I did what I was supposed to do and now it's up to you to make sure that you do what

---

[5] Accord, *United States* v. *Morello,* 250 F.2d 631, 634 (2d Cir. 1957); *Norton* v. *Clark,* 253 Ill. 557, 564, 97 N.E. 1079 (1912); *Young* v. *Bennett,* 5 Ill. 43, 47 (1842); *Hartman Steel Co.* v. *Hoag & Son,* 104 Iowa 269, 273, 73 N.W. 611 (1897); *Unity Telephone Co.* v. *Design Service Co. of N.Y.,* 158 Me. 125, 131, 179 A.2d 804 (1962); *Buffum* v. *York Mfg. Co.,* 175 Mass. 471, 474, 56 N.E. 599 (1900); *Tirschet* v. *Hamilton Mutual Ins. Co.,* 80 Mass. (14 Gray) 456, 457 (1860).

[6] In a trial to a jury when part of a dialogue is admissible merely to illuminate other declarations, the court must instruct the jury not to use that part of the conversation as proof of matters asserted in it. *State* v. *Tropiano,* 158 Conn. 412, 420, 262 A.2d 147 (1969); *Engel* v. *Conti,* 78 Conn. 351, 354, 62 A.2d 210 (1905).

you're supposed to do as you promised me." To this statement Clara replied, "Everything will be all right, Walenty. Don't worry."

The court based its conclusion that Clara orally agreed to leave 225 Stanley Street to the plaintiffs not merely on these and other declarations, which Clara made in Walenty's presence on February 17, 1961, but also upon the history of her marriage to Walenty, the love and close relationship between Walenty and his children, his awareness of the imminence of his death, and Clara's execution of a will on the next day leaving all her property to Walenty. In this appeal, the defendants do not challenge the admission of any of this additional evidence.

In reaching its conclusion, the trial court also relied on the fact that throughout their marriage Clara and Walenty maintained their financial holdings separately. Attorney Chester Sledzik's and Mary Starzec's unchallenged testimony supports the inference that Walenty was the sole owner of 225 Stanley Street until he died. Agnes Hogan, another of Walenty's daughters, also testified that, during his marriage to Clara, Walenty stated that 225 Stanley Street was in his name and that he wanted it to stay that way because he wanted that property for his children.[7] Furthermore, Mary Starzec testified, without objection, that Clara had no survivorship interest in Walenty's

---

[7] The defendant objected to Agnes Hogan's statement which contained this information, claiming that it was not responsive to the question, "Were those his words?" The court struck an additional part of her answer which asserted a matter not directly related to words Walenty used. The defendant did not take an exception to the part of the response which the court allowed to remain and does not seek to overturn that ruling.

bank accounts and that Clara received mortgage payments from two homes in Hartford that she had sold. This testimony by three witnesses amply supports the trial court's subsidiary determination that both Walenty and Clara segregated their property from the other's.

Clearly admissible testimony proved by clear and satisfactory evidence, in accordance with the standard in *Wilson* v. *Warner,* supra, that Clara promised to leave 225 Stanley Street to Walenty's children upon her death. Hence, we decline to decide whether the trial court erred in relying on General Statutes § 52-172 to overrule hearsay objections to other declarations of Walenty which tended to prove that he and Clara kept their property separate, because the defendant has failed, on appeal, to demonstrate probable harm to her from any of those rulings. *Berndston* v. *Annino,* 177 Conn. 41, 45, 411 A.2d 36 (1979); *Wood* v. *Connecticut Savings Bank,* 87 Conn. 341, 349, 87 A. 983 (1913).

Courts may use the equitable device of a constructive trust to remedy the unjust enrichment which results from not disposing of property as promised after the promise induced someone with whom the promissor shared a confidential relationship to transfer the property to the promissor. *Cohen* v. *Cohen,* 182 Conn. 193, 203, 438 A.2d 55 (1980).

The plaintiffs clearly and satisfactorily established that Clara made her explicit promise in the context of Walenty's full confidence and trust in her, her implicit reassurances of faithfulness, and his knowledge of his terminal illness, the day before he executed his will, and three days before he died.

Hence, the promise involved a confidential relationship. *Hieble* v. *Hieble,* 164 Conn. 56, 61, 316 A.2d 777 (1972).

In this context, Clara's promise and her confidential relationship with Walenty permitted the trial court to infer that Walenty would not have devised 225 Stanley Street to Clara had he not relied on her promise to convey it to his children upon her death. The defendant failed to negate this inference. *Hieble* v. *Hieble,* supra, 62.

Because Clara acquired property from Walenty with whom she shared a confidential relationship, by promising him that she would leave the property to his children and she failed to fulfill her promise, a constructive trust would compel her, if she were alive, to convey the property, to the person to whom it justly belongs.[8] *Cohen* v. *Cohen,* supra; *Hieble* v. *Hieble,* supra, 59; *Worobey* v. *Sibieth,* 136 Conn. 352, 355, 71 A.2d 80 (1949); *Beatty* v. *Guggenheim Exploration Co.,* 225 N.Y. 380, 386, 122 N.E. 378 (1919); Restatement, Restitution § 160; Restate-

---

[8] The weight of authority allows the testator's intended beneficiary to receive the property when a court imposes a constructive trust to prevent the unjust enrichment of a person who has simply failed to perform a promise to convey the property received under the testator's will to the testator's intended beneficiary. *Buckingham* v. *Clark,* 61 Conn. 204, 23 A. 1085 (1891); 1 Scott, Trusts (3d Ed. 1967) § 55.1. Few cases require actual fraud or a confidential relationship between the devisee or legatee and the testator before the intended beneficiary can take. 1 Scott, loc. cit.

Professor Scott argues that in cases of broken promises without fraud, duress, or undue influence the policy of the statute of wills requires that the constructive trust favor the testator's heir, next of kin, residuary devisee, or residuary legatee. 1 Scott, loc. cit. We need not examine the merits of Professor Scott's argument because, in this case, the plaintiffs are both the intended beneficiaries of Walenty's agreement with Clara and the residuary beneficiaries of his will.

ment (Second), Trust § 44 (comment a); Bogert, Trusts & Trustees (2d Ed. 1960) § 471; 5 Scott, Trusts (3d Ed. 1967) § 462.

Because Clara's failure to keep her promise to Walenty unjustly enriched her estate, the court did not err in imposing a constructive trust to compel her executor to convey the property to the plaintiffs. *Redke* v. *Silvertrust,* supra; *Fisk's Appeal,* 81 Conn. 433, 438, 71 A. 559 (1908); *Foreman* v. *Foreman,* 251 N.Y. 237, 167 N.E. 428 (1929); *Olsen* v. *First National Bank,* supra.

There is no error.

In this opinion the other judges concurred.