[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff Margaret R. Craig was the stepdaughter of the defendant's decedent, EILLEEN H. CRAIG. Eilleen Craig died in December, 1992 at the age of ninety-five. The plaintiff brings this action seeking compensation for services she rendered to Eilleen Craig from May 1985 until the decedent's death. During those years the plaintiff resided with the decedent and rendered services with respect to the decedent's personal care and the care of her home.
The plaintiff's claim is set forth in three counts of her complaint. The first alleges an express agreement by the decedent to pay the plaintiff for the services which she rendered. In the second count the plaintiff alleges that the decedent was unjustly enriched by the services provided by the plaintiff. The third count alleges that the plaintiff rendered the services in consideration for the decedent's promise to provide for the plaintiff in her will.
The defendant denies that the plaintiff is entitled to any recovery from the estate and further has alleged two special defenses and a counterclaim. In the first special defense, the defendant contends that the plaintiff's claims are barred by the Statute of Frauds. In the second special defense, the defendant claims that the plaintiff's claims are barred by the statute of limitations. The counterclaim sets forth a claim against the plaintiff for the reasonable value of room and board provided to her during the time when she lived in the decedent's home and provided services. The plaintiff denies any liability for room and board charges.
The court finds the facts as hereafter set forth. When the plaintiff was fifteen years old, her mother died. Four years later, in 1939, her father married the decedent and all three of them moved into a house at 148 Woodruff Avenue, Watertown, (the CT Page 3233 "Home") which had been owned by the decedent prior to her marriage to the plaintiff's father. Some time after the marriage, the decedent transferred title to the Home so that it was owned jointly by the decedent and David Craig, the plaintiff's father.
The plaintiff never married and lived in the Home for much of her adult life. In 1980 the plaintiff retired from her employment at a bank. In October, 1980, David Craig died. The plaintiff was the executrix of her father's estate and learned that both her father and her stepmother had executed wills in 1978. Each will provided that all of the assets were to left to the surviving spouse. If the spouse did not survive, each will left the assets in two equal shares, one for the plaintiff and one for the defendant Barrie Smith, the decedent's nephew. As a result of the provisions of David Craig's will, the decedent acquired all of David Craig's assets upon his death.
The relationship between the plaintiff and the decedent was always acrimonious, but the plaintiff continued to reside in the Home after her father's death. In 1982, the plaintiff moved out of the Home at the decedent's request. The plaintiff then moved to a subsidized apartment at an elderly apartment complex in Watertown.
In the spring of 1985, the decedent, who was then eighty-seven years old, fell and broke her hip. She was confined to her bed and needed assistance. She asked the plaintiff if she would help by staying at the Home with her. The plaintiff agreed to do so and resided at the Home continuously until after the decedent's death. The plaintiff kept her apartment throughout the years she resided at the Home, fearing that the decedent might once again ask her to leave. The plaintiff did not pay rent or room and board for residing at the Home. She did not pay for utilities, food (except for an occasional purchase of groceries), or fuel for the Home. The decedent hired nurses or nurses' aides as necessary to provide her personal care and also hired women to cook, clean and do laundry. The plaintiff did not contribute to the payment for these services.
In 1989 the plaintiff learned that the decedent had years earlier executed a first codicil to her will and now was executing a second codicil. As a result of both codicils, the plaintiff knew that the decedent had changed her will to leave CT Page 3234 the Home to Diane Smith, the wife of the defendant Barrie Smith, and her piano to one of the aides with whom she was particularly close. The plaintiff was left one-third of the residuary estate. The plaintiff understood in 1989 that she had been "cut out of" the Home as a result of the codicils. Nevertheless, she continued to reside at the Home and render services to the decedent.
After the decedent's death, the stocks in her estate were sold and the proceeds were used to pay several years of unpaid real estate taxes on the Home. The Home also was sold and the proceeds of that sale were used to pay taxes due the State of Connecticut, the federal government and the town of Watertown. The balance in the estate is approximately $17,000, which is the balance remaining from the sale of the Home.
Although most of these facts are not in dispute, the parties do disagree as to whether the decedent promised or agreed to compensate the plaintiff in the decedent's will for the services rendered by the plaintiff from 1985 until the decedent's death in 1992. The plaintiff claims the decedent did so promise or agree; the defendant denies it.
Claims based on an alleged oral agreement to compensate the services of a family member through a bequest or devise in a will pose at least two difficulties for our courts. First, there is the potential that the living plaintiff may take advantage of the absence of the deceased promisor to press a false claim. Taylor v. Corkey, 142 Conn. 150, 153-4 (1955);Graybill v. Plant, 138 Conn. 397, 400 (1951). Secondly, such cases can result in a mischaracterization of the nature of the alleged promise or agreement.
 A distinction must be drawn between expressions denoting an intention to give and those indicating an obligation to pay. Many statements mistakenly relied on by claimants as creating an obligation to compensate by will are nothing more than statements by the deceased denoting an intent to give of his bounty.
G. Wilhelm, Settlement of Estates, (Rev. Ed. 1974), § 241, 353-4.
In response to these potential problems, our courts have adopted both a higher burden of proof for such claims as well as CT Page 3235 a presumption against such claims by family members. In order to sustain a claim based on an oral agreement to compensate for services through a will, the plaintiff must prove by clear and satisfactory proof that there was a mutual understanding or agreement. Ubysz v. DiPietro, 185 Conn. 47, 58 (1981); Andersonv. Zweigbaum, 150 Conn. 478, 482 (1963); Perkins v. Corkey,147 Conn. 248, 250 (1960); Taylor v. Corkey, supra, 142 Conn. 153-4. This level of proof is higher than a fair preponderance of the evidence, the customary standard of proof in civil cases. This higher burden of proof applies not only to contract or quasi-contract claims, but also to unjust enrichment claims based, as we have here, on the failure to keep a promise to make a bequest in a will. Starzec v. Kida, 183 Conn. 41, 45, 49 (1981).
Since the early 1900's our Connecticut Supreme Court has employed the presumption that services provided by one family member to another are gratuitously rendered, without the expectation for payment. Hoskins v. Saunders, 80 Conn. 19, 22
(1907); Cotter v. Cotter, 82 Conn. 331, 332 (1909); Downey v.Guilfoile, 96 Conn. 383, 386 (1921); Perkins v. Corkey, supra,147 Conn. 251. The court has employed the presumption in a case where stepsons rendered services to their stepmother. Hoskinsv. Saunders, supra, 80 Conn. 22.
The issues to be decided by this court are whether the plaintiff has proven by clear and convincing evidence, sufficient to overcome the presumption, that the decedent obligated herself to pay the plaintiff for the plaintiff's services and whether the plaintiff rendered those services in consideration of and in reliance on that promise. The court finds that the plaintiff did not sustain that burden.
The plaintiff initially testified that when the decedent asked her to return to the Home to assist her because of her broken hip, she also told her that she would be reimbursed for her services by the decedent's leaving her a one-half interest in the Home. In her deposition, however, which was admitted at trial as a full exhibit, the plaintiff testified that the decedent simply said that she wanted the plaintiff to "come back and help me for a while." The plaintiff made no immediate reference to a promise by the decedent to leave her a bequest in the will. At a different point in her deposition the plaintiff testified:
 A . . . [A]s I understood it, half the property and house was going to me and half was going to CT Page 3236 Barrie. . . .
 A . . . And, they had reciprocal wills, Eileen and my father.
Q Okay.
 A. And, Eileen told me, when I came back to the house, that she was going to leave me that . . .
 Q She was going to leave you part of the land and house?
A Yes.
Q But she didn't say how much?
 A No. At yet another point in her deposition, the plaintiff testified:
Q Can you be any more specific about that?
 A Well, when I first went there, I said: it's going to be very difficult for me, Eileen, to be over here, even though I don't have to pay for my board and keep, but I have to maintain the apartment because they are hard to come by. And, I had to pay my rent and everything connected with it. And, she said: don't worry, I'll take care of you. And, she never did.
During her trial testimony, the plaintiff also testified that because her father and the decedent had reciprocal wills, she "expected" that the decedent's will would leave her a half interest in the Home. On cross-examination during the trial, the plaintiff conceded that the decedent did not know that the plaintiff expected payment for her services.
The plaintiff's testimony about her alleged agreement with the decedent was inconsistent in the following several respects: (a) whether the decedent expressly agreed to compensate the plaintiff for her services by leaving her a bequest or devise in the will or whether the plaintiff simply "expected" such a bequest or devise; (b) whether the agreed upon bequest or devise CT Page 3237 was to be an interest in the Home or an interest in her estate generally; and (c) whether the decedent promised the plaintiff a specified share of the Home or the estate or both. (In her post-trial memorandum the plaintiff claims the decedent agreed to leave her a one-half interest in the Home and a one-half interest in her personal property.)
Confronted with these many inconsistencies, the court is not satisfied that the plaintiff has proven by clear and satisfactory proof that the decedent obligated herself to compensate the plaintiff in her will. The failure of the plaintiff to testify consistently about the specific terms of the decedent's promise or agreement leads the court to question whether any commitment to pay was made by the decedent.
Moreover, even if the plaintiff had established the existence of an obligation by the decedent to pay, the plaintiff did not establish that she agreed to render services in reliance on that agreement. In Downey v. Guilfoile, the Supreme Court approved the following jury instruction:
 If you find that [the claimant] rendered services for her father without other expectation of reward, in the hope of inheriting the property, the case ends here, for she cannot recover. If, on the other hand, there was an express promise to compensate her by leaving her his property as heir at law, and the services were rendered in consideration of and reliance upon it, and the promise was not fulfilled, the law . . . will secure to her from the estate the reasonable value of her services . . .
(Emphasis added.) Downey v. Guilfoile, supra, 96 Conn. 386. The plaintiff did not testify that she returned to the Home and assisted the decedent because of the decedent's promise or agreement to compensate her. Instead, she testified that she returned because of her close relationship with her father and the fact that she knew that her father would want her to assist her stepmother.
The plaintiff's failure to establish the decedent's agreement or promise to compensate the plaintiff through the decedent's will is fatal to all three counts of the plaintiff's complaint. Accordingly, it is unnecessary to address the defendant's special defenses. Judgment is entered for the CT Page 3238 defendant on all three counts of the complaint.
In support of his counterclaim, the defendant testified during trial as to the fair rental value of the Home. However, the defendant's post-trial memorandum failed to brief the counterclaim. The counterclaim is therefore deemed abandoned.Collins v. Goldberg, 28 Conn. App. 733, 738 (1992). Judgment is entered for the plaintiff Margaret Craig on the counterclaim.
VERTEFEUILLE, J.