[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff herein seeks to impose a constructive trust upon certain real estate designated as 318 Congress Avenue in the city of Waterbury, which was formerly conveyed to the decedent who was her brother Michael. He died on December 8, 1996, and Kathleen, the administratrix of his estate, is his widow. Michael was predeceased by his parents. His father, Rocco, died on September 1, 1988, and his mother, Dora, died on CT Page 1126 November 30, 1993. Rocco and Dora conveyed the title to their property by quitclaim deed to Michael on July 23, 1985, for the consideration of "love and affection." The plaintiff asserts that her parents executed this conveyance with the intention and understanding that Michael would hold the property in trust and share the profits from it after they died. She further asserts that Michael took title to the property with that understanding.
There were conversations between Rocco and Dora in the presence of a close family friend of many years who talked about the conveyance of the property and who herself became involved in a discussion of the parents' intention with respect to that property. She claims that the parents disclosed the intention of placing the property in Michael's name with the clear understanding that he would share the profits of the house with his sister the plaintiff, Joanne, after they died. The family friend told Rocco that he should put it in writing if he wanted Michael to share the house with Joanne because she stated, "often things don't get done, you know, so put in writing." Rocco assured her and Dora that he would explain to Michael that he was to share the property with his sister. Dora shared the family friend's concern about the property being conveyed in both names, but she deferred to her husband's will.
Michael Jacaruso was the proprietor of a small convenience store and meat market which his parents established on the first floor of 318 Congress Avenue, in which he worked from the time he was fourteen years old. The business was not successful, and it closed in 1978. Michael made so little money from the convenience store that he and his wife, Kathleen, left her parents' two-family home and moved in with Michael's parents. He supported both his family and his parents for as long as he conducted the business and supposedly continued to take care of the property, which is the subject matter of this litigation, until such time as he died.
In 1987, Michael obtained a loan from the Webster Bank in the amount of $55,000, part of which was used to repay his aunt for a $24,000 loan which she had made to him to help him with business debts arising from said business and the ownership and the maintenance of the property. In 1990, he took out an $8400 loan with the Neighborhood Housing Services of Waterbury to make repairs to the property. In 1994. he took out a $40,000 mortgage loan against the property to repay the Neighborhood Housing loan, funeral expenses for his mother and other personal expenses. The plaintiff never offered to repay her brother for her half of the business loan he repaid to his aunt, and she never paid any of the expenses on the property while her parents lived there or thereafter.
There appeared to have been several conversations about the manner in CT Page 1127 which Michael held title to the property. In addition to the general conditions that supposedly were expressed, the plaintiff testified that her father, shortly before he died in 1988, again told her that Michael was to share the property with her. Her mother often told her that Michael was to share the property after the mother died. She discussed it with her daughter, the plaintiff, before she died on Thanksgiving of 1993. The wills of Rocco and Dora Jacaruso were admitted into evidence, and they clearly show a scheme to leave their property equally to both Joanne and Michael, with Michael being named as the executor of both wills. That does not suggest that the wills purport to dispose of the property previously conveyed to Michael. They are offered, however, as evidence of the intent to benefit both siblings equally.
The plaintiff asserts that Michael was well aware that his parents conveyed the property to him with the "trust" and understanding that he would share the property with her when the parents died. She testified as to four discussions that she had with her brother concerning his sharing any proceeds obtained from the property with her. The first conversation occurred on the day of their mother's funeral when Michael brought up the fact that when she received her share of the proceeds of the sale of the property she could make improvements to her home. The second occurred when Michael recommended that Joanne and her husband default on the mortgage on their own home and move into the property at 318 Congress Avenue rent free. That idea was not acceptable to the plaintiff. The third occurred at the Big Y Grocery Market in Naugatuck, where Michael worked after closing out his business. He told the plaintiff that the house was not selling, that he was going to take it off the market and wait until they could receive a better selling price. He asked Joanne if she wanted him to buy her half of the house. She supposedly responded "yes," and he told her he would apply for a mortgage to obtain the funds to purchase her share in the property. The fourth and final occasion occurred when Michael told Joanne, you know you only get a $20,000 mortgage, because the property was considered a commercial property, or words to that effect. He stated because he could not borrow the amount of money he needed, he could not afford to buy her share of the property. He gave her $5000 of the proceeds from the mortgage as a payment on her share of the property. When he gave her the $5000, he said he would give her the remainder of her share when the property was sold.[1] After Michael died, an attorney representing the plaintiff, not present counsel, filed what this court concludes to be an informal claim against the estate. Counsel representing the estate denied the claim, and this action followed. There does not appear to be any problem with the claim, informal though it was, with respect to content or timeliness.
Oral agreements concerning interests in land are unenforceable. In this jurisdiction, however, the law has established that the Statute of Frauds CT Page 1128 does not apply to trusts arising by operation of law. Reynolds v.Reynolds, 121 Conn. 153, 158; Ward v. Ward, 53 Conn. 188, 196; Hieble v.Hieble, 164 Conn. 56, 59. The equitable concept of a trust in this instance of a constructive trust overcomes the fatal impact of the Statute of Frauds when the requisites are satisfied. Equity employs a constructive trust to remedy the unjust enrichment which results when a testator leaves property to a person in reliance on that person's subsequently disregarded promise to convey the property to the testator's intended beneficiary. Starzec v. Kida, 183 Conn. 41, 44. Courts may use the equitable device of a constructive trust to remedy the unjust enrichment which results from not disposing of property as promised after that promise induced someone with whom the promisor shared a confidential relationship to transfer the property to the promisor. Cohen v. Cohen,182 Conn. 193, 203; Starzec v. Kida, 183 Conn. 41, 49. Before a trial court finds that a constructive trust exists and should be imposed, the court must find that a confidential relationship existed between the transferor and the transferee at the time of the transfer of the property. Starzec v. Kida, supra; Filosi v. Hawkins, 1 Conn. App. 634,639. The confidential or special relationship must be of a nature which generates a natural inclination to repose great confidence and trust.Filosi v. Hawkins, 1 Conn. App. 634, 639, quoting Cohen v. Cohen, supra. A confidential relationship exists not only where there is a fiduciary relationship but also where because of a familial relationship, the transferor is justified in placing confidence in the belief that the transferee will act in the interests of the transferor. Restatement, Restitution § 182, comment c.
In order to establish a constructive trust, the moving party has to establish the intent by the grantor to benefit a third person; that the transfer of such property to another person who stands in a confidential relationship to the grantor or promisor is with the intent that the transferee will transfer the property to a third person; and, that unjust enrichment will result if the transferee is allowed to keep the property. Gulack v. Gulack, 30 Conn. App. 305, 310. Before a court imposes a constructive trust upon real property on the ground that one deceased failed to fulfill a promise to another, the facts in which such trust may be implied should be clearly and satisfactorily established. Starzec v.Kida, supra, citing therein Wilson v. Warner, 84 Conn. 560, 564-65.
One seeking to establish a constructive trust bears the burden of establishing such by clear and convincing evidence. Starzec v. Kida, supra. It appears as a general proposition that a confidential relationship is required as a requisite to the establishment of a constructive trust. There is authority that once a confidential relationship has been established, substantial authority holds that the party opposing a constructive trust has the burden of negating that CT Page 1129 constructive trust by clear and convincing evidence. That authority, however, does not relieve the moving party from the obligation of proving the existence of the promise or agreement which is requisite to such a trust. See Hieble v. Hieble, supra, 62.
The deceased's parents also owned a piece of property across the Street from 318 Congress Avenue in Waterbury. On October 23, 1978, the decedent parents conveyed that property to the plaintiff by quitclaim deed. She testified that she was unaware of that conveyance, and there is no evidence to contradict that testimony. Her first knowledge of that "gift" was when she began to receive bills, such as tax bills, for the property. She did not pay any charges against the property whatsoever. In fact, the decedent parents paid them all. In January of 1986, she learned that her parents intended to sell that piece of property. She then conveyed it back again by a quitclaim deed on January 9, 1986, with no consideration therefor. She claims to have been concerned by the fact that it was not her property, and once again, that she didn't wish to pay any taxes or charges against it.
The decedent parents thereafter conveyed the property by warranty deed, with rights of survivorship, to Angelo R. Corbo and Natalie A. Corbo on March 25 of 1986. The evidence establishes that the Corbos paid the decedent parents the sum of twenty thousand dollars ($20,000) for the property. The plaintiff received the sum of two thousand dollars ($2000) from the decedent parents supposedly to buy an automobile, although she had paid absolutely no expenses against the property and paid no funds when the property was conveyed to her. Her testimony establishes that the parents also gave money to Michael but did not disclose what the amount of that gift apparently was. She, however, gave Michael nothing from her share of the gift from her parents. The plaintiff also received jewelry valued at two thousand five hundred dollars ($2500) upon her mother's death. There is no indication that Michael received anything from his mother at that time.
The evidence offered to refute the inference of Michael fulfilling an obligation made to the grantor parents is that the plaintiff was always asking for money and the decedent brother provided her with the $5000 in effect to silence her. To reiterate, the plaintiff never paid any of the expenses that were incurred in the operation of 318 Congress Avenue, including taxes, insurance, and/or any assessments that were levied against the property. The decedent, Michael, made any and all payments that were indeed made to satisfy those charges.
There was no evidence to establish that the decedent, Michael, ever knew of the transfer of the business from his decedent parents to him. His parents, being "old-World," merely gave up their efforts to conduct CT Page 1130 the business, and Michael, as the first and only son, became the operator of that business until such time as it closed. It is also patently clear that no credible evidence to support the claim of a promise by Michael to his father to hold the property as a co-owner with his sister and for each of them to share equally in any proceeds that might arise out of any profit from the conduct of that business or the disposition of that property. There is also no credible evidence that Michael utilized the familial or confidential relationship with his father to induce his father and mother to transfer the property to him. Finally, there is no evidence that the decedent Michael was unjustly enriched as a result of the conveyance from his deceased parents. It might also be noted parenthetically that the premises were severely damaged by fire some time ago and that the building is "boarded up," and there seems to be an ongoing "battle" with the insurance carrier over the proceeds from that fire. From the description of its present condition, the court is unable to draw any inference with respect to any value in the property whatsoever. In fact, there was no evidence of value offered at any time. The plaintiff has failed to meet her burden in accordance with the evidentiary standard required. Judgment may enter for the defendant as a result of Joanne's failure to prove a constructive trust, together with costs of suit.
Moraghan, JTR